(Nos. 17870-77, 17752-56, 17784, 17792, 17826-27.—Reversed and remanded.)

THE O'GARA COAL COMPANY, Appellant, *vs.* LOUIS L. EM-MERSON, Secretary of State, Appellee.*

*Opinion filed April 20, 1927—Rehearing denied June 10, 1927.*

1. CORPORATIONS—*sections 101 and 105 of Corporation act, basing license fee on authorized stock, are invalid as to foreign corporations.* Sections 101 and 105 of the general Corporation act, basing the initial tax for increase in capital stock and the annual license fees on authorized capital stock rather than on the stock actually issued and outstanding, are invalid as applied to foreign corporations whether the stock is of par value or no par value, as they create unjust discrimination, violate the fourteenth amendment of the Federal constitution, burden interstate commerce, and do not fix a reasonable basis for computation of a license fee for the privilege of doing business in the State. (*Hump Hairpin Co.* v. *Emmerson,* 293 Ill. 387, and *Roberts & Schaefer Co.* v. *Emmerson,* 313 id. 137, explained:)

2. SAME—*State cannot prohibit foreign corporation from engaging in interstate commerce.* The right of a corporation to engage in interstate commerce is beyond the State's control and the State cannot exclude a foreign corporation engaged in interstate commerce from doing business in the State although the right to engage in local business may be denied, but the State cannot impose, as a condition of the right to transact local business, a tax or license fee on the corporation's interstate commerce.

3. SAME—*statutory provisions fixing the value of no par value stock for the purpose of tax are invalid as to foreign corporations.* The provisions of the general Corporation act putting an arbitrary value on no par value stock for the purpose of computing the license fees of corporations are invalid as applied to foreign cor-

*With this case the following cases are consolidated: Nos. 17752-53-54-55-56, the Continental Can Company; No. 17784, the Missouri Pacific Railroad Company; No. 17792, the United Electric Coal Companies; No. 17826, the Western Electric Company; No. 17827, the Borden Company; No. 17871, the Chicago By-Product Coke Company; No. 17872, the Fleischmann Company; No. 17873, the Ramapo Ajax Corporation; No. 17874, the Certain-Teed Products Corporation; No. 17875, the American Brake Shoe and Foundry Company; No. 17876, Colgate & Co.; No. 17877, the Beatrice Creamery Company.

porations engaged in interstate commerce, as different corporations may have shares of stock of no par value issued at different prices and in different amounts, notwithstanding such statutory provisions are valid as applied to domestic corporations, as such corporations, having chosen to incorporate in the State imposing the tax, cannot complain of the discrimination.

4. CONSTITUTIONAL LAW—*tax on interstate commerce is not justified because it applies locally.* A State may tax its own internal commerce, but that does not give it any right to tax interstate commerce, and a burden imposed by a State upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to the people of all the States, including the people of the State enacting the statute.

5. SAME—*invalid statute taxing interstate commerce cannot be made valid by construction.* Where the subjects of taxation can be separated, so that that which arises from interstate commerce can be distinguished from that which arises from commerce wholly within the State, the court will act upon the distinction and restrain collection of a tax on the former and permit collection of the tax upon the latter; but this rule cannot be availed of where the method of assessment of the particular tax is an integral part of a scheme of legislation and where application of the rule would require a change in the wording of the statute, as it is the province of the legislature, alone, to make the law and of the courts only to construe and apply it.

APPEALS from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

BROWN, HAY & STEPHENS, CASSELS, POTTER & BENTLEY, ISHAM, LINCOLN & BEALE, FYFFE & CLARKE, ROBERT R. KANE, JOSEPH S. GRAYDON, WHITMAN & MILLER, WHEELOCK, NEWEY & MACKENZIE, EDWARD F. IRWIN, GEORGE B. GILLESPIE, LOUIS F. GILLESPIE, H. L. BROWNING, JOSIAH WHITNEL, EDWARD J. WHITE, GUNN, PENWELL & LINDLEY, J. DWIGHT DICKERSON, and CUTTING, MOORE & SIDLEY, for appellants.

OSCAR E. CARLSTROM, Attorney General, B. L. CATRON, A. D. RODENBERG, and DAVID J. KADYK, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The O'Gara Coal Company, a corporation organized in 1905 under the laws of the State of New York for the purpose of mining coal, manufacturing coke and other products and the sale of them, was licensed in 1906 to transact business in this State and has ever since been engaged in transacting its business in this State. It made its annual reports, in accordance with the statutes, to the Secretary of State for the years beginning July 1, 1923, 1924 and 1925, showing that as originally organized the corporation was authorized to issue 60,000 shares of stock of the par value of $100 and did issue that amount, being $1,000,000 of preferred stock and $5,000,000 of common stock. On April 25, 1923, the corporation amended its charter in accordance with the laws of the State of New York so that its authorized capital was increased to $16,000,000 by the addition of 100,000 shares of Class A preferred stock of the par value of $100. For the year beginning July 1, 1924, 69,376 shares of all classes of capital stock were outstanding, and for the year beginning July 1, 1925, 69,534 shares of all classes were outstanding. These facts were included in the corporation's annual reports to the Secretary of State, and in these reports the corporation protested against the computation of the franchise tax on the basis of authorized stock and insisted upon the computation and assessment on the basis of stock actually issued and outstanding. No complaint is made of the computation of the percentage of business transacted and property located in the State for each of the years in question, nor to the correctness of the ascertainment of the amount of the tax on the basis of authorized stock. The corporation paid to the Secretary of State as a franchise tax for each of the years 1923 and 1924 $3000 and for the year 1925 $3476.70, but the Secretary of State has assessed additional franchise taxes, based upon the authorized capital stock of the corporation, for

the months of March, April, May and June, 1923, and for the three years beginning on July 1, 1923, 1924 and 1925, amounting to $11,692.07, with a credit of $756.40, making the net amount assessed for franchise tax $10,935.67, payment of which was demanded by the Secretary of State. The corporation protested against the assessment and collection of this additional tax, and on its demand its objections were heard on June 24, 1925, but the Secretary of State refused to modify the assessment of the additional tax and demanded immediate payment of it. In order to avoid the penalties prescribed by the statute and preserve its right to transact business in this State, the company paid the Secretary of State, under protest in writing, $10,935.67, the amount of the additional franchise tax, and thereupon, within the thirty days during which the statute required the Secretary of State to hold payments made under such circumstances before depositing them with the State Treasurer, filed a bill and obtained a temporary injunction against the deposit of the money with the State Treasurer. The bill prayed that upon a final hearing the Secretary of State be permanently enjoined from paying the money over to the State Treasurer and be decreed to pay it to the complainant. The bill was subsequently amended, a demurrer of the defendant was sustained, and, the complainant having elected to stand by its amended bill, the court ordered the temporary injunction dissolved and the amended bill dismissed for want of equity. The complainant appealed from this decree, and the court ordered that the temporary injunction should be continued in force during the pendency of the appeal.

If the assessment of the tax on the basis of authorized capital stock is constitutional the amount paid to the Secretary of State was legally due, but if the statute providing for such assessment is unconstitutional as applied to the appellant no amount was due. The single question involved in the case is the validity of those provisions of

the general Corporation act which require the franchise tax against foreign corporations licensed to transact business in this State and engaged in interstate commerce to be assessed on the basis of the total capital stock authorized by the State of its incorporation instead of on the basis of the amount of such capital stock actually issued. It is claimed that these provisions constitute a direct burden upon interstate commerce, in violation of clause 3 of section 8 of article 1 of the constitution of the United States; that they violate the fourteenth amendment to the constitution of the United States by depriving the complainant of its property without due process of law, denying it the equal protection of the law, and abridging its privileges and immunities as a citizen of the United States and of the State of New York. It is also claimed that they violate section 2 of article 2 of the constitution of the State of Illinois by depriving the complainant of its property without due process of law, and that they violate section 1 of article 9 in that they are not uniform as to the class upon which they operate.

The provisions in question are found in section 105 of the general Corporation act, as follows: "Each corporation for profit  *  *  *  heretofore or hereafter organized under the laws of this State or admitted to do business in this State, and required by this act to make an annual report, shall pay an annual license fee or franchise tax to the Secretary of State of five cents on each one hundred dollars of the proportion of its capital stock, authorized by its charter in the office of the Secretary of State, represented by business transacted and property located in the State." This section authorizes the assessment of the tax based upon authorized capital stock instead of issued capital stock against all corporations alike, making no discrimination between domestic and foreign corporations, and it has been upheld against both classes. (*Armstrong* v. *Emmerson,* 300 Ill. 54; *American Can Co.* v. *Emmerson,* 288 id. 289; *Hump Hairpin Co.* v. *Emmerson,* 293 id. 387; *Roberts &*

*Schaefer Co.* v. *Emmerson,* 313 id. 137.) The two cases last cited were affirmed by the Supreme Court of the United States. (258 U. S. 290; 271 id. 50.) The question which is argued in the present case was not, however, presented in any former case. That question is whether section 105 discriminates between foreign corporations without any just basis of discrimination. Complaint was made in the case of *American Can Co.* v. *Emmerson, supra,* and in *Hump Hairpin Co.* v. *Emmerson, supra,* of a discrimination between foreign corporations and domestic corporations, but it was held unfounded.

In *Roberts & Schaefer Co.* v. *Emmerson, supra,* the corporation was a domestic corporation, and the objection was made to the validity of section 105 that its requirement that shares of capital stock of no par value should, for the purpose of fixing the annual license fee, be considered as of the value of $100 a share, violated the provision of section 1 of article 9 of the State constitution that the taxes to be imposed upon corporations owning or using franchises and privileges should be uniform as to the class upon which they operated, but we held that the differences between the two classes of authorized shares were of such a character as to afford a reasonable basis for the classification, and that the basis for computing the franchise tax on no par value stock did not impair the obligation of contracts, deprive of property without due process of law or deny the equal protection of the laws. The question whether the difference between the privileges to issue the two classes of stock, one having a par value and one having no par value, was such as to constitute a proper basis of classification for purposes of taxation was presented 'for decision by the Supreme Court of the United States for the purpose of determining whether the resulting discrimination was or was not arbitrary and prohibited by the fourteenth amendment to the Federal constitution, and it was decided that there were differences of practical importance

between the two classes of stock, and the privileges of issuing them, which were not only a proper basis of classification of them for taxation but made unavoidable certain differences in the method of assessing the tax, and that the classification was reasonably related to the policy of taxation and did not violate the fourteenth amendment. On the writ of error from the Supreme Court of the United States the question did not arise as to the validity of authorized capital stock as the basis for a franchise tax. That court said that it could not say that a State may not impose a franchise tax on a domestic corporation measured by its authorized capital stock, citing *Kansas City, Fort Scott and Memphis Railway Co.* v. *Botkin,* 240 U. S. 227, and *Kansas City, Memphis and Birmingham Railroad Co.* v. *Stiles,* 242 id. 111, but it stated further that the plaintiff was not in a position to raise this question because the total amount of its authorized capital stock had been issued and it was not therefore affected unfavorably by the discrimination of which it complained. The court having expressly refused to consider the sufficiency of authorized capital stock as the basis of a franchise tax, this decision of the Supreme Court of the United States has no application here.

As to the objection based upon the interstate commerce clause of the Federal constitution the judgment of the Supreme Court of the United States is conclusive on us, and in *Air-Way Electric Appliance Corp.* v. *Day,* 266 U. S. 71, it was decided that a tax on a corporation organized in one State of the Union for the privilege of doing business in another State is an unconstitutional burden on interstate commerce where less than the authorized amount of capital stock has been issued and the tax is measured by the proportion of the total authorized capital stock which its business done and property owned in the State bore to its total business done and property owned everywhere. In that case the corporation, organized in the State of Delaware, was authorized to issue 400,000 shares of capital stock,

of which 200,000 shares were common stock and 200,000
founder's stock, the only difference being that the owners
of the former are entitled to one vote per share and the lat-
ter to five votes per share.   It was licensed to do business
in the State of Ohio, and in July, 1921, filed with the tax
commission the report required for the year ending July 1,
1921.   All its property, valued at $458,278.56, was situated
in Ohio.   The amount of business transacted in the preced-
ing year was $250,594.58.   The value of the stock was $7
a share.   The number of shares of stock issued was 50,485,
of which 10,010 were common and 40,475 founder's stock.
The statute fixed the fees payable by a foreign corporation
having common stock without par value at three-twentieths
of one per cent upon the proportion of the authorized pre-
ferred stock represented by property owned and used and
business transacted in Ohio, and five cents per share upon
the proportion of the number of shares of authorized com-
mon stock represented by property owned and used and
business transacted in Ohio.   Of the $250,594.58 (the
amount of business transacted in the preceding year) $70,-
802.30, only, was intrastate and the remainder ($179,-
792.28) was interstate.   The corporation brought a suit in
the district court of the United States against the State
Treasurer and other State officers to restrain the collection
of the franchise tax assessed against it, and a motion for
a temporary injunction was heard by a court of three judges
pursuant to section 266 of the Judicial Code, who held that
the objections to the act imposing the tax and the tax as-
sessed under the act were not valid, but the tax of $20,000,
being five cents a share on the 400,000 shares, was exces-
sive, and the collection of any part of the tax in excess of
$14,926 was enjoined.   This sum was arrived at by divid-
ing the sum of the total amount of the property of the
corporation in the State of Ohio and the total amount of
its business transacted there by the sum of the total amount
of the property of the corporation everywhere and the total

amount of its business transacted everywhere and multiplying the quotient by the number of shares of capital stock authorized to be issued, 400,000. The result, 298,520, was adopted as the number of shares of authorized stock represented by property owned and used and business transacted in Ohio. This formula for ascertaining the proportion of the capital stock represented by business transacted and property located in the State is the same as that provided by section 106 of our general Corporation act. The Supreme Court, in deciding the cause on appeal, quoted the rules announced in *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, as the result of the previous decisions of the court, which are in substance as follows: (1) The power of the State to regulate the transaction of local business within its borders by a foreign corporation is not unrestricted but must be asserted in subordination to the limitation which the constitution places on State action. (2) Under the commerce clause a State statute which either directly or by necessary operation burdens interstate commerce is invalid, regardless of the purpose with which it was enacted. (3) A State cannot tax property belonging to a foreign corporation not located or used within the State. (4) The State cannot require a foreign corporation, as a condition of the right to do a local business therein, to submit to a tax on its interstate business or on its property outside the State. (5) A license fee of a given per cent of the entire authorized capital of a foreign corporation doing both a local and interstate business in several States is a tax on the entire business of the corporation, including that which is interstate, and on its entire property, including that in other States. (6) Such a license fee is unconstitutional and void as illegally burdening interstate commerce and as wanting in due process, because laying a tax on property beyond the jurisdiction of the State. Applying these rules, it was held that the corporation's entire business, intrastate and interstate, and all its property, wherever

located, were represented by the 50,485 shares of stock out-standing, and the tax which the trial court sustained was based on 298,520 shares. It is said in the opinion: "The inevitable effect of the act is to tax and directly burden interstate commerce of foreign corporations permitted to do business in Ohio and engaged in interstate commerce, wherever the number of shares authorized, subject to the charge of five cents each, exceeds the number of outstanding shares attributable to or represented by the corporation's property and business in that State. * * * As some of the outstanding shares are represented by plaintiff's interstate business, the application of the rate to all the shares, or to a number greater than the total outstanding, necessarily amounts to a tax and direct burden upon all the property and business, including the interstate commerce, of the plaintiff." In referring to and approving this case in the later decision of *Roberts & Schaefer Co.* v. *Emmerson,* 271 U. S. 50, the court said: "While one factor in the computation of the tax was properly the proportion of the corporation's business done and property owned within the State, the other factor was the amount of its authorized capital stock, only a part of which had actually been issued. The authority to issue its capital stock was a privilege conferred by another State and bore no relation to any franchise granted to it by the State of Ohio or to its business and property within that State. When authorized capital stock is taken as the basis of the tax variations in the amount of the tax are obtained, according as the corporation has a large or small amount of unissued capital stock. This we held in the *Air-Way Electric Appliance Corp. case* to be an unconstitutional discrimination, since it resulted in a tax larger than the tax imposed on other corporations with like privileges and like business and property within the State but with a smaller capital authorized under the laws of the State of their creation."

These decisions of the Supreme Court of the United States hold that the mere number of authorized shares is not a reasonable basis for the classification of foreign corporations for the purpose of determining the amount of annual fees which they should pay for the privilege of transacting business in another State than that of their creation, and such a classification is not based on anything having relation to the purpose for which it is made. *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1; *Pullman Co.* v. *Kansas,* id. 56; *Ludwig* v. *Western Union Telegraph Co.* id. 146; *International Paper Co.* v. *Massachusetts, supra.*

In *Hump Hairpin Manf. Co.* v. *Emmerson,* 258 U. S. 290, the judgment of this court sustaining the validity of section 5*b,* which was added to the act to regulate the admission of foreign corporations for profit to do business in this State by the amendment of July 1, 1917, (Laws of 1917, p. 306,) was affirmed, and it is true that of the capital stock of $6,000,000 which the corporation in that case was authorized to issue by the laws of West Virginia, under which it was organized, only $5,500,000 was issued. This fact, however, though mentioned in the opinion, was of no importance in the decision of the case and was given no consideration by court or counsel. The contention of the plaintiff in error in the Supreme Court of the United States was stated in the opinion of that court to be, that the business which the corporation did with residents of States other than Illinois was interstate business, and that treating it as a part of the intrastate business of the corporation in determining the total amount of the business of the corporation transacted in the State rendered the act unconstitutional, because the tax assessed was a burden on interstate commerce. The court held that this contention could not be sustained, and that if the Secretary of State or the court, in computing the tax, erroneously treated as intrastate that which was interstate business, such error

would be reason, in a proper case, for correcting the computation but would not justify declaring the act unconstitutional. All the property of the corporation was situated in Illinois. It was a manufacturing corporation and all its manufacturing was done in Illinois. The total sales on which the tax was computed for the year in question amounted to $263,334.96, of which $25,814 were made to residents of Illinois. The court, after holding the business done with residents of States other than Illinois to be interstate business, proceeded to consider the question whether the use made of the amount of this interstate business in determining the tax rendered it invalid. It was said that while a State may not use its taxing power to regulate or burden interstate commerce, on the other hand it is settled that a State excise tax which affects such commerce,—not directly but only incidentally and remotely,—may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating Federal constitutional rights. The question is whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of or restraint upon it, or whether it affects it only incidentally or remotely, so that the tax is not in reality a burden although in form it may touch and in fact distinctly affect it. It was also said that the tax in that case was not imposed directly upon the proceeds of interstate commerce and was not computed upon it. The $235,000 of interstate business of the company was only one of three factors used in estimating or measuring "the amount of the capital stock represented by property and business transacted in Illinois," upon which the privilege tax in dispute was computed. The other two factors were $5,540,000 of property in Illinois and $25,000 of business stipulated as done with residents of that State. If the fee or privilege tax were computed at the statutory rate on the whole of the interstate business it would be trifling in

amount, but if computed on the property admitted to have been in use in the State it would be but slightly less than the tax collected. At most, it was held, the assessment, so far as interstate commerce was concerned, was incidental, remote and unimportant and was therefore constitutional. The amount of capital stock either authorized or issued was not a factor in determining the amount of the tax assessed and was not even referred to in this connection.

The difference between the direct burden imposed upon interstate commerce by a tax which violates the Federal constitution and the indirect and remote effect of a tax which a State may constitutionally impose is illustrated by the Federal Supreme Court in *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, by two cases: one of a State tax upon the business of selling goods in foreign commerce measured by a certain percentage of the gross transactions in such commerce, which was held by its necessary effect to be a tax upon the commerce and at the same time a duty upon exports, contrary to sections 8 and 10 of article 1 of the constitution because it operated to lay a direct burden upon every transaction by withholding for the use of the State a part of every dollar received; (*Crew-Levick Co.* v. *Pennsylvania,* 245 U. S. 292;) the other, of the assessment of an income tax upon the entire net income of a corporation, three-fourths of which was derived from the export of goods to foreign countries, which was held not to amount to laying a tax or duty on articles exported, within the meaning of clause 5 of section 9 of article 1 of the constitution. (*Peck & Co.* v. *Lowe,* 247 U. S. 165.) The difference between a tax measured by gross receipts and one measured by net income, it was said, affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise, and

may be sufficient to diminish the profit so as to impede or
discourage the commerce.   A tax upon net profits has not
the same deterrent effect, since it does not arise unless a
gain is shown over expenses and losses, and the tax can
not be heavy unless the profits are large.   Such a tax im-
posed upon net incomes, from whatever source arising, is
but a method of distributing the cost of government, like
a tax upon property, and if there be no discrimination
against interstate commerce it constitutes one of the ordi-
nary and general expenses of government, from which per-
sons and corporations otherwise subject to the jurisdiction
of the States are not exempted by the Federal constitution
because they happen to be engaged in commerce between
the States.

So a tax imposed upon the property of a person or cor-
poration which is situated within a State, or the business
of a person or corporation transacted in a State, consti-
tutes an ordinary burden of government, from which such
persons are not exempted because they are engaged in in-
terstate commerce.   Where such a tax is imposed upon the
property or business of a foreign corporation for the privi-
lege of transacting business within a State it does not vio-
late the Federal constitution even though the total amount
of business transacted, including interstate commerce, be
one of the factors used in arriving at the amount of the
tax.   While the State may impose a franchise or privilege
tax upon a foreign corporation based on the amount of
its property owned in the State or the amount of its intra-
state business, the State cannot compel such corporation to
submit to a tax on its interstate business or on its prop-
erty outside the State as a condition of doing local business
within the State.   A license fee of a certain per cent of
the authorized capital stock of a foreign corporation doing
both interstate and intrastate business is necessarily a tax
on all the business of the corporation, including its inter-
state business, and on all its property, including that in

other States, and is unconstitutional as an unlawful burden on interstate commerce and as wanting in due process because imposing a tax on property beyond the jurisdiction of the State. *International Paper Co.* v. *Massachusetts, supra; Looney* v. *Crane Co.* 245 U. S. 178.

The State, which grants the franchise to be a corporation and authority to issue capital stock, may charge the corporation with an initial fee and an annual franchise tax upon the amount of the capital stock which it grants authority to issue, but it cannot charge a foreign corporation with such fee or tax for the privilege of transacting business within the State based upon its authorized capital. The authority of the foreign corporation to issue stock, or the amount of stock it may have outstanding, does not depend upon the laws of Illinois but upon the laws of the State in which it was organized. A corporation's capital stock can be properly used as a measure of a franchise tax based on the amount of its property owned and business transacted in the State, only when it bears some relation to the value of the privilege granted. The tax of five cents on each $100 of the proportion of its authorized capital stock represented by business transacted and property located in this State is an arbitrary charge, having no reasonable relation to the value of the privilege granted, in every case where a substantial part of the authorized capital stock of the corporation has not been issued. One foreign corporation may have an authorized capital stock of $500,000, all issued; another, a capital stock of $1,000,000, with only $500,000 issued. If they own the same amount of property in this State and elsewhere and transact the same amount of business within this State and elsewhere, the tax of the one which has the unissued stock will be twice that of the other. It is thus apparent that the law discriminates among foreign corporations against those which have not issued the total amount of their authorized stock. All the business of the corporation and all its

property are represented by its issued stock and not by its authorized stock, and a State law which assesses against a foreign corporation a tax on "the proportion of its capital stock authorized by its charter, represented by business transacted and property located in this State," not only burdens interstate commerce but discriminates against all corporations having any unissued stock. The appellant conceded that the Secretary of State correctly computed the rate and paid the amount due on the basis of the amount of stock issued. It also paid the amount which it claimed to be excessive but under protest, and it is entitled, under the allegations of its bill, to an injunction and the return of the amount so paid.

The Attorney General has cited many decisions of the Supreme Court of the United States which he contends sustain the principles of the franchise provisions of the general Corporation act and hold them to be valid. The discussion of these cases here is unnecessary in view of the discussion and decision of the question in the *Air-Way Electric Appliance Corp. case* and the approval of that decision in the recent case of *Roberts & Schaefer Co.* v. *Emmerson, supra.* The subject was considered in the case of *Looney* v. *Crane Co.* 245 U. S. 178, a case which was argued orally and submitted for decision in May, 1916, and was afterward restored to the docket and at the request of the court argued orally a second time. The decisions cited by the appellee were relied upon in that case to sustain the statute of the State of Texas imposing, as a condition of admitting a foreign corporation engaged in interstate commerce to do business in that State, a tax based upon the amount of its authorized capital stock and a franchise tax based upon capital, surplus and undivided profits. The opinion by Chief Justice White cites the *Western Union Telegraph Co.* and *Pullman Co. cases* in 216 U. S., *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, and other cases, and after referring to the dominancy of these

adjudications states that despite these controlling decisions it is insisted that the statutes are not repugnant to the constitution of the United States, the argument being rested on cases decided since those previously decided and cited in the opinion, (*Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, and others,) which are relied upon by the appellee here to sustain the decree. The opinion continues: "The proposition is, therefore, that these cases overruled the previous decisions. The incongruity of the contention will be manifest when it is observed that not only did the cases relied upon contain nothing expressly purporting to overrule the previous cases, but, on the contrary, in explicit terms declared that they did not conflict with them and that they proceeded upon conditions peculiar to the particular cases."

Sixteen appeals were taken by twelve other foreign corporations from decrees dismissing their respective bills against the Secretary of State seeking relief against the initial tax required by section 101 of the general Corporation act upon increases in the amount of capital stock represented in Illinois or against the annual franchise tax, or both, under circumstances similar to those in the case of the O'Gara Coal Company, with variations. The causes were argued at the bar together and submitted upon that argument and briefs filed in the respective cases. The case of the Missouri Pacific Railroad Company (No. 17784) is similar in all respects to that of the O'Gara Coal Company, differing only in dates and amounts, and requires the same judgment.

Five of the appeals (Nos. 17752-53-54-55-56) were by the Continental Can Company, a New York corporation licensed to do business in Illinois in 1913, engaged in manufacturing tin cans in factories in Illinois and several other States and transacting business extensively in many States. These cases involve the question already considered in the O'Gara Coal Company case of the assessment against a foreign corporation admitted to do business in Illinois of an-

nual franchise taxes on the basis of its authorized capital stock when a substantial portion of it has not been issued, and also the question of the assessment of additional initial fees on the same basis and the valuation of stock having no par value at $100 a share in the assessment of annual franchise taxes, and additional initial fees against a foreign corporation having such stock which was issued for less than $100 a share and none of which was issued for more. The reasoning which determines that the proper basis for taxation in the case of stock having a par value is the stock issued, only, and not the amount authorized, applies with equal force to the case of stock having no par value. So far as the initial fee is concerned, the appellee contends that the State has the right to refuse admission to foreign corporations to transact local business in the State or to prescribe such terms of admission as it sees fit, since no element of interstate commerce or constitutional right is involved. The State has no absolute power to exclude a foreign corporation engaged in interstate commerce from doing business in the State. The right of such corporation to engage in interstate commerce is beyond the State's control. The State may deny it the right to engage in local business, but cannot require it, as a condition of its right to transact local business, to pay in the form of a fee a specified per cent of its capital stock representing the sum total of its property and business, not only in the particular State but throughout the United States and in foreign countries. (*Western Union Telegraph Co.* v. *Kansas, supra; Pullman Co.* v. *Kansas, supra; Leloup* v. *Mobile,* 127 U. S. 640.) The discrimination produced by the use of authorized capital stock as the basis of taxation whenever any substantial part of the stock remains unissued is no less apparent in the case of corporations having no par value stock than in those whose stock has a par value. The five bills filed by the Continental Can Company all stated the amount and kind of stock which the corporation

was authorized to issue at the various times when reports were required to be made and the amounts issued during the respective periods for which reports were made. The amount of stock so issued was shown by the reports always to have been materially less than the amount authorized to be issued. Sections 101 and 105, as applied to the appellant in these five cases, was in violation of the interstate commerce clause of the Federal constitution and the guaranty of the equal protection of the laws by the fourteenth amendment.

A statute of Massachusetts which imposed on foreign corporations doing business in that State an excise tax of one-fiftieth of one per cent of the par value of its authorized capital stock, but not exceeding $2000 in any year, and provided that where the stock of the corporation was issued without par value $100 should be considered par, was sustained in *American Uniform Co.* v. *Commonwealth,* 237 Mass. 42, and held not to be discriminatory or to deny the equal protection of the laws or be regulation of interstate commerce. *Detroit Mortgage Corp.* v. *Secretary of State,* 211 Mich. 320, supports the same view, while *People* v. *Welsh,* 195 N. Y. Supp. 184, holds the contrary, following the reasoning of *People* v. *Mensching,* 187 N. Y. 8. The question is now, however, concluded by the holding in *Airway Electric Appliance Corp.* v. *Day, supra,* in which it is said that the mere number of authorized non par value shares is not a reasonable basis for the classification of foreign corporations for the purpose of determining the amount of such annual fees. Any system of taxation must have for its basis some standard of value. It may be the amount of business transacted, the amount invested in business, net profits, or other standard capable of measurement in money. It is the province of the legislature to determine the standard. If it is the amount of capital stock the amount must be reducible in some way to terms of money, and it must be fixed with some regard to value,

whether par value, issue price, market value or value determined in some other manner, and not by an arbitrary valuation at a set figure, whether $100, $5 or $500. There is no universal or generally prevalent law or custom which establishes the value of shares of stock of no par value at any certain figure, and a law of one State which enacts that for purposes of taxation the shares of stock of foreign corporations having no par value shall be regarded as of a definite specified value is arbitrary, discriminatory, and denies due process of law and the equal protection of the law. The terms of the general Corporation act which provide that in the event that the corporation has stock of no par value its shares for the purpose of fixing fees shall be considered to be of the par value of $100 per share are therefore discriminatory between foreign corporations having shares of stock of no par value issued at different prices and in different amounts. We held in *Roberts & Schaefer Co.* v. *Emmerson*, 313 Ill. 137, that this provision in reference to a domestic corporation did not violate section 1 of article 9 of the constitution, requiring that a franchise tax should be uniform as to the class upon which it operates, and did not take property without due process of law or deny the equal protection of the laws, and the appellee contends that this provision should be applied to all corporations having and using such stock in the State, and that if any amount less than the statutory valuation is taken as the measure of the tax with respect to foreign corporations it would result in unequal taxation and in discrimination, generally, against domestic corporations. This is undoubtedly true, but it does not justify the imposition of a tax, in violation of the Federal constitution, upon a foreign corporation engaged in interstate commerce. The legislature has the right to impose the tax at the rate of $100 a share regardless of the amount paid for the stock, because it can grant the corporation the franchise of issuing stock having no par value upon such terms as it deems proper, but it can

not subject a foreign corporation engaged in interstate commerce to such discriminatory valuation of its stock having no par value. The burden imposed by a State upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to the people of all the States, including the people of the State enacting the statute. (*Minnesota* v. *Barber*, 136 U. S. 313.) A State may tax its own internal commerce, but that does not give it any right to tax interstate commerce. (*Robbins* v. *Taxing District*, 120 U. S. 489.) The tax, if invalid as against corporations from other States, operates as a discrimination against the corporations of Illinois, which has been decided to be valid. The State has the right so to tax the corporations organized under its laws, and if persons choose to incorporate under those laws they do so of their own free will and are themselves responsible for the discrimination. A State may impose a rate of tax upon a foreign corporation for the privilege of doing business in the State which differs from the rate which applies to its own corporations for the franchise which the State grants in creating them. *Northwestern Mutual Life Ins. Co.* v. *Wisconsin, 247* U. S. *132; Cheney Bros. Co.* v. *Massachusetts,* 246 id. *147; Kansas City, Memphis and Birmingham Railroad Co.* v. *Stiles, supra.*

The Chicago By-Product Coke Company (No. 17871) manufactures gas and certain articles of commerce. Its property is all situated in Illinois and its business of manufacturing is carried on here. More than five per cent of its business consisted of interstate commerce in the articles which it manufactured. It was admitted to do business in Illinois prior to 1922. Its capital stock, consisting of 60,000 shares of no par value, of which only 58,974 shares had been issued, was increased on September 29, 1924, to 90,000 shares, and a certificate of such increase was presented November 1, 1924, to the Secretary of State, who demanded $1500 as an initial fee for the 30,000 additional

shares, which the appellant paid under protest to induce the Secretary of State to file the certificate of increase. The appellee demanded the further sum of $1125 license fee for three-fourths of a year in accordance with section 129 of the Corporation act, which the appellant also paid under protest to prevent the revocation of its license to do business in Illinois. No part of the 30,000 additional shares was issued by the appellant. Upon the case stated by the bill the State was not entitled to exact either an additional license fee or an additional franchise tax for three-fourths of a year. This case differs from the O'Gara Coal Company case only in the fact that in this case the unissued stock had no par value.

The Certain-teed Products Corporation (No. 17874) is a Maryland corporation with an authorized capital stock of 200,000 shares of the par value of $100 and 500,000 shares of no par value. Less than half the shares of either kind was issued. The amount of the tax assessed against the corporation was $1605.80, which it paid under protest.

The Ramapo Ajax Company, (No. 17873) with an authorized capital stock of 30,000 shares of preferred stock of $100 par value and 60,000 shares of common stock of no par value, had issued all of the no par value stock for $29.75 a share and all but 500 shares of the preferred stock.

The American Brake Shoe and Foundry Company (No. 17875) was organized with a capital stock of $10,-000,000,—50,000 shares of preferred stock and 50,000 shares of common stock, all of $100 par value. It was licensed to do business in Illinois, and afterward amended its charter to make its capital stock consist of 100,000 shares of preferred stock of $100 par value and 400,000 shares of no par value. At the time of filing the annual report for 1925 there were outstanding 96,615 preferred shares of $100 par value and 156,139 common shares of no par value, representing $50 a share. The Secretary of State from the appellant's report computed that .23454 of its capital stock

was represented in Illinois and demanded a franchise tax of $5863.50, based on its total authorized capital stock at $100 a share, though a large part of both kinds of stock was not issued.

These last three cases are alike, in that the capital stock of each consisted in part of par value stock and in part of no par value stock, and the statute provides no valid method of ascertaining the amount of the tax. The basis of taxation is the authorized capital stock, and the statute requires that all the authorized stock shall be taken into consideration, the par stock at its par value and the no par stock at $100 a share. The latter valuation cannot be applied for the reasons which have been stated, and since it enters into the formula for ascertaining the amount of franchise tax, no legal method exists for ascertaining the amount of the tax. The tax is to be assessed against each share of the corporate stock. The statute provides that the tax should be assessed against each $100 valuation of the capital stock, but the valuation of a part of the stock is arbitrary and unconstitutional, and therefore the whole tax is vitiated. The statute was not intended to and cannot be held to provide for a franchise tax on the shares of capital stock having a par value and no tax on the shares of stock having no par value.

The Fleischmann Company (No. 17872) had originally 60,000 shares of $100 par value, equally divided between preferred and common stock. It re-organized, not changing the preferred stock but changing its common stock to 1,500,000 shares of no par value, which were all issued and paid for at five dollars a share, by the cancellation of the original common stock of $100 par value and by the transfer of $4,500,000 of surplus to the capital account. On November 20, 1925, an amendment to its articles of incorporation was made, under which 4,500,000 shares of no par value were issued instead of the 1,500,000 shares, and the new shares were issued only to the holders of the

1,500,000, without any addition to the assets of the appellant. The appellant presented to the appellee a certified copy of the certificate of the amendment of its articles of incorporation to be filed, whereupon the appellee demanded an additional initial fee of $13,921.50, and an additional franchise tax of $10,441.14 for three-fourths of a year under section 129 of the general Corporation act, and a filing fee of $20. The appellant tendered the filing fee of $20, and afterward paid the sums of $13,921.50 and $10,441.14 to the appellee under protest. There was no increase in the capital stock of the appellant by the issue of the 4,500,-000 shares and no fees were due for the division of the stock into shares of less value.

The United Electric Coal Company (No. 17792) is a corporation organized under the laws of the State of Delaware and licensed to do business in Illinois, engaged in both interstate and intrastate commerce. It was authorized to issue $250,000 of six per cent preferred stock and 15,000 shares of no par value stock. Of the preferred stock, $150,000 was canceled and retired on March 31, 1923, and the remainder prior to May 1. An issue of seven per cent preferred stock in the sum of $750,000 was authorized on April 27, 1923, and $570,000 was issued at once, $100,000 of which was used to retire and cancel the same amount of the six per cent issue. This stock was retired in installments, the last installment being $420,000, which was retired by the issue of $420,000 of a $650,000 seven per cent issue authorized on June 27, 1925. Of this authorized issue of $650,000 only the $420,000 issued on June 27, 1925, had been issued when the bill was filed to the March term, 1926, of the circuit court of Sangamon county. On June 11, 1925, an issue of $6,000,000 of eight per cent preferred stock had been authorized to retire bonds, but none of it had been issued. By two amendments the no par value stock was increased to 150,000 shares, of which 120,000 shares had been issued, which were of the value of $12.39

a share. The tax was assessed upon $650,000 of preferred stock, of which only $420,000 was issued,—150,000 shares of no par value stock at $100 a share, of which only 120,000 were issued, and $6,000,000 of preferred stock, which was authorized on June 11, 1925, no part of which had been issued. The appellee demanded payment of $25,516.68 on account of initial fees and annual franchise tax, which the appellant paid under protest although it owed only $620.46. After the original bill had been filed an assessment of franchise tax for 1926 of $9730.16 was made, which was paid under protest, and a supplemental bill was filed to prevent its being paid to the State Treasurer. The demurrer to this bill and supplemental bill should have been overruled.

The Western Electric Company (No. 17826) is a New York corporation with an authorized capital stock of $52,500,000, composed of 500,000 preferred shares of $100 each and 500,000 shares of no par value common stock, and 246,796 of the preferred shares and all the no par value shares have been issued. The Secretary of State assessed a tax against the corporation on the basis of $100,000,000 of capital stock, being the full amount of the 500,000 shares of preferred stock, though less than half of it was issued, and the 500,000 shares of no par value stock at $100 a share. The demurrer should have been overruled for this reason.

In this case the appellant also contends that since the laws of New York, under which it was organized, provide that the amount of each of the shares of so-called no par common stock which it was authorized to issue should be deemed to be an aliquot part of the aggregate capital so specified in excess of the amount of the preferred stock, and since that aliquot part was five dollars, therefore the provision of section 105 of the general Corporation act requiring the shares of stock having no par value to be regarded as of the value of $100 did not apply to it, and that the formula prescribed by section 106 to be used in ascer-

taining the amount of the authorized capital stock repre-
sented by business transacted and property located in this
State, which directs that the sum of the business of the
corporation transacted in this State and the total tangible
property of such corporation located within this State shall
be divided by the sum of the total business of the corpo-
ration and the total tangible property of the corporation,
wherever situated, is arbitrary and unconstitutional because
it does not include the intangible property of the corpora-
tion.  In view of the decision of the other questions these
become moot questions, which we need not decide.

The Borden Company (No. 17827) is a New Jersey
corporation whose authorized stock is divided into pre-
ferred having a par value of $100 a share, which is all is-
sued, and common having a par value of $50 a share, thirty
per cent of which is unissued.  The question in regard to
this case is the same as in the O'Gara Coal Company case,
and the same question of the validity of section 106 is
raised as in the Western Electric Company case.

Colgate & Co. (No. 17876) is a New Jersey corpora-
tion.  Section 105 provides that "in no event shall the
amount of such license fee or franchise tax be less than
that required by this act of corporations having no tangible
property or business in this State," and section 107 pro-
vides that such corporations shall pay at a graduated rate,
ranging from $10 for corporations having capital stock of
$50,000 or less, to $1000 for all corporations having capi-
tal stock of $10,000,000 or more.  The appellant was au-
thorized to issue 150,000 shares of preferred stock of the
par value of $100 each, 100,000 shares of no par value
common stock and 10,000 of no par value voting stock.  It
has assigned a value of $100 a share to the no par value
stock, and has issued 60,000 shares of the preferred, 81,200
shares of the no par common stock and 10,000 shares of
no par voting stock.  The total value of the stock issued
and outstanding is $15,120,000.  From the annual report

of the appellant filed in 1925 it appears that .01959 per cent of its issued capital stock was represented in Illinois, which would produce a tax of $148.10, and for the following year .01724 per cent of the capital was represented, which would produce a tax of $130.33. A tax of $1000 for each of the years beginning July 1, 1925, and July 1, 1926, was assessed against it under the provisions of sections 105 and 107 of the general Corporation act. It is contended that section 107 is unconstitutional as applied to the facts in this case, and that if any tax could be assessed it amounted only to $148.10 for the first year and $130.33 for the second.

The Beatrice Creamery Company, (No. 17877,) a corporation organized under the laws of the State of Delaware, with an authorized capital stock of 190,000 shares of the par value of $63.15 each, of which only 157,500 shares had been issued, thus making the amount of stock issued and outstanding $9,946,125, was assessed, and paid under protest, a tax of $1000 for the privilege of engaging in business in Illinois for the year beginning July 1, 1925, such assessment being based on its authorized and not its issued stock.

The questions raised in these last two cases are the same: whether section 107 is an arbitrary and unconstitutional act as applied to the appellants. The amounts of the taxes required of appellants are determined under section 105 by reference to section 107. The basis for such determination is the arbitrary and unconstitutional standard of authorized stock and the arbitrary and unconstitutional valuation of no par value stock at $100 a share. The demurrers to these bills should have been overruled.

It has been suggested that the statute referring to the authorized capital stock having a par value may be held valid in respect to issued capital stock even if invalid as to stock not issued; that a tax assessed on that basis would be unobjectionable, and that the court may state the

proper basis on which assessments of no par value stock may be made. It might be that the assessment of a franchise tax on the issued capital stock having a par value would not offend against the constitution if par value stock alone were the subject of consideration. Even though the statute used the term "authorized capital stock" instead of "issued stock," it might be argued that such a law was constitutional in respect to all matters with which it was competent for the legislature to deal,—that is, all commerce not interstate or foreign,—though unconstitutional as to interstate and foreign commerce because prohibited by the Federal constitution. So the Supreme Court of the United States held in *Ratterman* v. *Western Union Telegraph Co.* 127 U. S. 411, that the collection of a single tax assessed on the receipts of a telegraph company derived partly from interstate commerce and partly from commerce within the State but returned and assessed in gross without separation or apportionment, is not wholly invalid but is so only in proportion to the extent that such receipts were derived from interstate commerce. Where the subjects of taxation can be separated, so that that which arises from interstate commerce can be distinguished from that which arises from commerce wholly within the State, the court will act upon this distinction and will restrain the collection of the taxes on that portion of the receipts derived from interstate commerce but will permit the State to collect the tax upon commerce wholly within the limits of the State. This case followed the principle announced in *Western Union Telegraph Co.* v. *Massachusetts,* 125 U. S. 530, and was approved in *Western Union Telegraph Co.* v. *Seay,* 132 id. 472. The principle of these cases cannot be availed of here, where the method of assessment of the particular tax is an integral part of a scheme of legislation which is unconstitutional in other parts which are not separable from the general scheme. The subject of legislation here in-

cludes the whole scheme of taxation of the right of foreign corporations of every character to transact business in the State, the terms of their admission, the fees required of them and the taxes they must pay, the reports they must make and the rights they may exercise. In regard to the initial fees and franchise taxes the plan provided for a tax on each $100 of the proportion of the capital stock authorized by a corporation's charter, represented by business transacted and property located in this State, each share of stock of no par value to be considered to be of the par value of $100. In each case the basis for determining the amount of the tax was unlawful. In the case of par value stock, if that alone were involved, the basis could easily be corrected by making it the issued instead of the authorized stock, but the legislature, only, can make the correction. It is the province of the legislature, alone, to make the law and of the courts only to construe and apply it. The legislature did not, however, contemplate that only stock having par value should be the basis for fixing the amounts of fees and taxes, but that the proportion of all the stock of every corporation, whether having a par value or having no par value, or partly one and partly the other, should be considered in fixing such amounts. A construction of the legislation, then, which would permit the collection of the tax from corporations all of whose stock had a par value but not from corporations all of whose stock had no par value, and would permit the collection of some part of the tax and not the collection of the remaining part where the corporation's capital stock was partly par value stock and partly no par value stock, would be in violation of the legislative intent that the tax should be assessed on the basis of the whole of the capital stock, without regard to its character.

The conclusions which we have reached are summarized as follows:

(1) The amount of capital stock which foreign corporations are authorized to issue by the States under whose laws they are organized is not a reasonable basis for the classification of such corporations for the purpose of determining the amount either of the initial fee for a certificate of authority to do business in Illinois or of the annual franchise tax where a substantial part of such stock has not been issued, whether the stock of such corporations has a par value or is without a par value.

(2) The number of shares into which the capital stock of foreign corporations may be divided is not a reasonable basis for classification of such corporations for the purpose of determining the amount either of the initial fee for a certificate of authority to do business in Illinois or of the annual franchise tax, and therefore an arbitrary valuation of the capital stock of no par value of such corporations at $100 a share, or any other definite amount a share, without reference to par value, sale price, market price, or any consideration other than number of shares, renders such classification discriminatory against corporations which have issued such stock at prices less than $100 a share and denies to them due process of law and the equal protection of the laws.

(3) Sections 96, 101 and 105 of the general Corporation act are invalid as against foreign corporations.

(4) The courts cannot compute the tax on any other basis than that fixed by the legislature.

The decrees in all the cases are reversed and the causes are remanded to the circuit court of Sangamon county, with instructions to overrule the demurrers.

*Reversed and remanded, with directions.*