AIR-WAY ELECTRIC APPLIANCE CORPORATION *v.* DAY, TREASURER OF THE STATE OF OHIO, ET AL.

DAY, TREASURER OF THE STATE OF OHIO, ET AL. *v.* AIR-WAY ELECTRIC APPLIANCE COR-·PORATION.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

Nos. 31 and 32. Argued April 30, May 1, 1924.—Decided October 20, 1924.

A manufacturing corporation, incorporated in Delaware with an authorized capital stock of a designated number of non-par value shares, of which only about one-eighth were issued, had all its property in Ohio, where it was duly authorized to do business, and transacted during a tax year a business of which 28% was confined to Ohio and the remainder was interstate. Under an Act of May 17, 1921 (§ 8728–11 Gen. Code Ohio) which prescribes an annual fee payable by each foreign corporation having common stock without par value, for the privilege of exercising its franchise in the State, of " five cents per share upon the proportion of the number of shares of authorized common stock, represented by property owned and used and business transacted in this State . . . ," the taxing authorities assessed a tax by applying this prescribed rate to the entire number of shares authorized. The court below reduced this by taking such proportion of the total number of shares authorized, as the value of the property plus

the local business was of that value plus all the business, and by applying the rate to the result. *Held:*

(1) That the tax, computed either way, and the act, violate the commerce clause, since all the corporation's business, intrastate and interstate, and all its property, were represented by the shares of stock outstanding; and the application of the rate to all the shares authorized, or to a number greater than the total outstanding, necessarily amounted to a tax and direct burden upon all the property and business, including the interstate commerce. P. 82.

(2) The fee imposed, in either case, was arbitrary, since the number of non-par shares which the corporation might issue under the law of Delaware was not an indication of the amount of its capital, and the number not subscribed or issued had no relation to the value of the privilege of doing business in Ohio. P. 83.

(3) The act, in its practical operation, does not require like fees for equal privileges held by foreign corporations in Ohio under the same circumstances. P. 84.

(4) A classification of foreign corporations for the purpose of determining the amounts of such annual franchise fees should be based upon something having relation to the purpose for which it was made. P. 85.

(5) The Ohio act, having no tendency to produce equality, and being of such character that there is no reasonable presumption that substantial equality will result from its operation, violates the equal protection clause of the Fourteenth Amendment. *Id.*

279 Fed. 878, reversed.

APPEAL and cross appeal from a decree of the District Court, enjoining the Treasurer and other officials of Ohio from collecting more than a stated portion of a franchise fee from the above named corporation, but declining to hold the tax void *in toto,* as the corporation claimed it to be, in this suit to enjoin its collection.

*Mr. Newton A. Tracy,* with whom *Mr. Thomas H. Tracy* and *Mr. George D. Welles* were on the briefs, for Air-Way Electric Appliance Corporation.

Under the Ohio constitution, "a tax on privileges and franchises can not exceed the reasonable value of the privilege or franchise originally conferred, or its continued

annual value thereafter. The determination of such values rests largely in the general assembly, but finally in the courts." *Southern Gum Co.* v. *Laylin,* 66 Oh. St. 578.

The privilege which appellant corporation has enjoyed for one year in Ohio was to use and own property of the value of $458,278 upon which it must pay the usual property taxes, and to do business in the State to the extent of $70,802.30. The lower court fixed the fee chargeable for the year 1921 at $14,926.00. Such a fee, when considering the privileges conferred, is far above the continuing value thereof and is unreasonable and in fact confiscatory.

The basis upon which the tax is computed bears no relation to the value of the privilege conferred. First, it takes the proportion of the number of shares of authorized stock represented by property owned and used and business done within the State, and, second, it multiplies that number by an arbitrary figure of five cents.

An initial fee based upon the authorized stock is usual, both when a new domestic corporation is formed and when a foreign corporation becomes domesticated. Beyond that, any fee for the privilege of carrying on business based upon authorized stock, unless it is reasonably limited in its maximum amount, is an anomaly, and unjustifiable.

Unissued stock, however, represents nothing and can have no relation to property owned or business transacted. Hence a fee computed on such a basis is unreasonable and unjust.

Various methods of computation have been used by different States. New York, for example takes the proportion which the corporation's actual capital employed within the State bears to its entire capital. Other States take the proportion of the subscribed or issued capital stock represented by property owned within the State; while another method used is to measure the fee by the business transacted within the State. It will be noticed

that in each of these methods the basis taken is indicative of the value of the privilege conferred. This is accomplished directly under a plan where the actual capital employed within the State is taken, and indirectly where the issued stock represented by the capital employed within the State is used.

When a basis of taxation is taken which does not reflect the value of the privilege sought to be taxed, there is a want of due process of law and a denial of the equal protection of the law. *Looney* v. *Crane Co.*, 245 U. S. 178; *International Paper Co.* v. *Massachusetts*, 246 U. S. 135.

The charge of five cents a share upon each share of authorized stock is also arbitrary and unjust as there is no logical connection between that charge and the value of that proportion of the privilege represented by that share. If the legislature can fix an arbitrary fee of five cents per share without any justification therefor, what is to keep them from making the charge five dollars per share?

A corporation's capital stock can be properly used as a medium for determining a tax based on its business transacted and property used within the State, only when it fairly reflects the value of the franchise granted. The par value of the issued stock does this to a certain extent, since money or property has been received by the corporation for the stock, but the number of shares into which the authorized issued and unissued stock is divided has no relation whatever to the value of the property of the corporation or the business transacted by it. *Farrington* v. *Mensching*, 187 N. Y. 8; *People* v. *Walsh*, 195 N. Y. S. 184.

There is an arbitrary discrimination between domesticated foreign corporations having par value stock and those having non-par value stock, amounting to a denial of the equal protection of the law.

There is an arbitrary discrimination between various domesticated foreign corporations having non-par stock amounting to a denial of the equal protection of the law.

That the legislative power to classify for the purpose of taxation is limited by the requirement that the basis of the classification must bear a reasonable relation to the purposes for which the classification is made has been repeatedly held by this Court. *Southern Ry. Co.* v. *Greene,* 216 U. S. 400; *Atlantic Coast Line R. R. Co.* v. *Daughton,* 262 U. S. 413, and many other cases.

It is also well settled that when a state law establishes a class and lays down a rule for taxing its members, the application of the rule must be such as will result in substantial equality as between the members of the class. *Gast Realty Co.* v. *Schneider Granite Co.,* 240 U. S. 55; *Farrington* v. *Mensching,* 187 N. Y. 8; *Staples* v. *Kirby Petroleum Co.,* 250 S. W. 293.

The actual determination of the value of the stock by the State Securities Commission in effect fixes the par value of the stock, that is the price at which it must be sold, and it therefore represents the money or property with which the corporation began to do business in the same manner as stock having par value. This is easily ascertained and can be conveniently applied. The argument of necessity, therefore, if it ever could justify an arbitrary classification, does not exist in this case.

When one department of a State has fixed the value of non-par stock at a set price, any law which taxes the privilege of doing business within its confines computed on its stock on a basis far in excess of the value theretofore fixed, amounts to the taking of property without due process of law.

The computation of the annual fee charged foreign corporations on the basis of their authorized stock while domestic corporations are charged on the basis of their subscribed or issued stock results in a flagrant discrimination in favor of domestic corporations. *Southern Ry. Co.* v. *Greene,* 216 U. S. 400; *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1. *Kansas City, etc. R. R. Co.* v.

*Stiles,* 242 U. S. 111; *Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147, distinguished.

That cases involving corporation taxes must be determined upon their own peculiar facts has been repeatedly held. *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68; *Kansas City Ry. Co.* v. *Kansas,* 240 U. S. 227; *Kansas City etc. R. R. Co.* v. *Stiles,* 242 U. S. 111.

Section 8728–11, as amended, is unconstitutional as being retroactive, or action of appellees illegal as they give the same a retroactive effect. Ohio Const., § 28, Art. 2.

*Mr. William J. Meyer,* with whom *Mr. Charles C. Crabbe,* Attorney General of the State of Ohio, was on the brief, for Day, Treasurer, et al.

" Business transacted " in Ohio by a foreign corporation doing all its manufacturing in Ohio and selling its products both in and outside of Ohio, includes, within the contemplation of §§ 5499 to 5503, General Code, the entire manufacturing cost of such products.

The construction of §§ 5499 *et seq.,* which we here contend for, was not presented to the District Court. There is no finding of facts by that court, nor is there any evidence, showing manufacturing costs. Nevertheless, we take it that if this Court finds that the decree below proceeded from an erroneous view of the law, there may be a reversal with instructions to the District Court to make correction in the amount of the tax. *Murdock* v. *Ward,* 178 U. S. 139; *Little Miami etc. R. R. Co.* v. *United States,* 108 U. S. 277; *Barnes* v. *Williams,* 11 Wheat. 415.

The exceedingly small element of interstate commerce in a case like the present, was pointed out in *Hump Hairpin Mfg. Co.* v. *Emmerson,* 258 U. S. 290.

But we have been unable to discover anything in that case or in the formula of the tax commission referred to by the District Court which excludes from the term

"business transacted in Ohio" the cost of manufacturing in Ohio of goods which might ultimately be sold in interstate commerce. The formula of the tax commission is a verbatim quotation from *State* v. *Coal Co.,* 17 Oh. N. P. Rep. (N. S.) p. 60.

We submit then that the District Court was not warranted in treating plaintiff's sales, $179,792.28, outside of Ohio as "business transacted" outside of Ohio, but that from such amount there should be deducted the cost of manufacturing.

This construction of the statute, we submit, will not yield an unconstitutional result as burdening interstate commerce. *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459; *Minnesota Rate Cases,* 230 U. S. 352; *Bacon* v. *Illinois,* 227 U. S. 504; *Coe* v. *Errol,* 116 U. S. 517.

And again, the construction is consistent with the principle that goods do not enter the field of interstate commerce until they begin to be transported to another State from the State in which they were manufactured.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Plaintiff, Air-Way Electric Appliance Corporation, brought this suit against the above named treasurer and other state officers to restrain the collection of a franchise fee charged against it as a foreign corporation for the privilege of exercising its franchises in Ohio during the year commencing July 1, 1921, on the grounds, among others, that the legislation of Ohio, under which the fee was imposed, is invalid under the commerce clause of the Constitution, and is repugnant to the Fourteenth Amendment.

Plaintiff was incorporated in 1920 under the laws of Delaware. Under its certificate of incorporation and the laws of that State, its authorized capital stock is 400,000 shares without par value, of which 200,000 shares are common stock and 200,000 founders' stock. The only

difference between the two classes is that holders of the former are entitled to one vote per share and of the latter to five votes per share. Shortly after its incorporation, it obtained from the Secretary of State in conformity with the laws of Ohio a certificate of admission to do business in that State, and also paid the initial fee for the privilege of there exercising its franchise. §§ 178, 179, 180, 183, 184, General Code of Ohio. It complied with the laws of Ohio regulating the sale of stock in that State and received a certificate from the Commissioner of Securities authorizing sale at $7 per share. §§ 6373 (1)–6373 (24), General Code of Ohio. It acquired two large manufacturing plants at Toledo, including grounds, buildings, tools, machinery, etc. August 1, 1920, it commenced business,— the manufacture of electrical household appliances and their sale in Ohio and elsewhere. In July, 1921, as required by law, it filed with the tax commission a report covering the year ended July 1, 1921. There had been issued and were then outstanding only 50,485 shares of stock, of which 10,010 shares were common and 40,475 were founders' stock. All of its property was located in Ohio; its value was $458,278.56. The amount of business transacted in the preceding year was $250,594.58. The complaint alleged and the answer admitted that the value of the stock was $7 per share.

Section 5503 (enacted May 31, 1911) imposes an annual fee required of foreign corporations having capital stock with par value as follows: " On or before October fifteenth, the auditor of state shall charge for collection, as herein provided, annually, from such company, in addition to the initial fees otherwise provided for by law, for the privilege of exercising its franchises in this state, a fee of three-twentieths of one per cent. upon the proportion of the authorized capital stock of the corporation represented by the property owned and used and business transacted in this state  .  .  ."

An Act of May 17, 1921 (§ 8728–11, General Code of Ohio) provides: ". . . The amount of fees payable by a foreign corporation having common stock without par value . . . under section 5503 shall be three-twentieths of one per cent. upon the proportion of the authorized preferred stock represented by property owned and used and business transacted in this state and five cents per share upon the proportion of the number of shares of authorized common stock, represented by property owned and used and business transacted in this state . . ."

Under the section last quoted, an annual fee of $20,000 was assessed and payment on or before December 1, 1921, was demanded, and notice was given that, if not made on or before that day, a penalty of 15 per cent. would be added. Under the laws of the State, all fees, taxes and penalties constitute liens on the corporation's property; a fine for each day's delinquency may be imposed; and in case of failure to pay, its authority to do business is liable to cancelation, and injunction and ouster are authorized. §§ 5506, 5507, 5509, 5512, 5513.

Plaintiff's report to the tax commission stated that the amount of business transacted in Ohio in the year ended July 1, 1920, was $250,594.58, whereas that figure represented its total sales, of which only $70,802.30, or about 28 per cent. was intrastate, and the balance $179,792.28, or about 72 per cent. was interstate. The state officers, assuming that all plaintiff's property and business was located and transacted in Ohio, made no apportionment between local and interstate business and fixed the annual franchise fee at five cents per share on its total authorized stock.

Plaintiff invoked equity jurisdiction on the ground that it was threatened with irreparable injury through the enforcement of the coercive provisions of the statutes above referred to. *Ohio Tax Cases,* 232 U. S. 576, 587. A mo-

tion for a temporary injunction was heard by a court of three judges. § 266, Judicial Code. It was held (279 Fed. 878) that the plaintiff's objections to the act and the tax were not valid; but the bill was retained to await the result of an application by the plaintiff to the tax commission for a rehearing and correction of the amount of the tax. Plaintiff made such an application, setting forth the above mentioned amount of intrastate and interstate sales respectively. The commission held that, as more than 60 days had elapsed after the certification of the amount of the tax by the state auditor, it had no jurisdiction to entertain such an application. At a later hearing, the court held that the commission was authorized to grant plaintiff a rehearing and make correction if it found the tax or any part of it to be erroneous; that it was not the intent of the state laws to include interstate commerce as a basis for the levy, and that plaintiff may not be taxed on its interstate business and on the portion of its authorized stock represented by property owned and used and business transacted in other States; that the $20,000 charge included a substantial sum levied directly on the stock representing interstate business and that the tax should have been $14,926—five cents per share on 298,520 shares. These figures were arrived at by taking such proportion of 400,000, the total number of shares authorized, as the actual value of plaintiff's property in Ohio plus its local business in that State is to such actual value plus all its business, and by applying thereto five cents per share.[1] By the decree defendants

---

[1] The formula employed by the court is the same as the announced rule of the tax commission for the ascertainment of the correct amount of the tax to be paid by foreign corporations, and is taken from the case of *State* v. *Coal Co.*, 17 Ohio Nisi Prius Reports (New Series) 60. It was applied as follows:

$$\frac{\$458{,}278.56 + \$70{,}802.30}{\$458{,}278.56 + \$250{,}594.58} \times 400{,}000 = 298{,}520$$

$$298{,}520 \times \$0.05 = \$14{,}926.00.$$

are enjoined from collecting any part of the tax in excess of $14,926. The plaintiff appealed, and attacks the act on the grounds above stated. Defendants appealed and contend that the lower court erred in finding that 298,520 shares of the authorized capital stock of plaintiff represented the property owned and used and business transacted by it in Ohio, and in enjoining the collection of a tax in excess of $14,926.

In cases involving the validity of the laws of a State imposing license fees or excise taxes on corporations organized in another State, this Court has decided:

" 1. The power of a State to regulate the transaction of a local business within its borders by a foreign corporation,—meaning a corporation of a sister State,—is not unrestricted or absolute, but must be exerted in subordination to the limitations which the Constitution places on state action.

" 2. Under the commerce clause exclusive power to regulate interstate commerce rests in Congress, and a state statute which either directly or by its necessary operation burdens such commerce is invalid, regardless of the purpose with which it was enacted.

" 3. Consistently with the due process clause, a State cannot tax property belonging to a foreign corporation and neither located nor used within the confines of the State.

" 4. That a foreign corporation is partly, or even chiefly, engaged in interstate commerce does not prevent a State in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the State cannot require the corporation as a condition of the right to do a local business therein to submit to a tax on its interstate business or on its property outside the State.

" 5. A license fee or excise of a given per cent. of the entire authorized capital of a foreign corporation doing

both a local and interstate business in several States, although declared by the State imposing it to be merely a charge for the privilege of conducting a local business therein, is essentially and for every practical purpose a tax on the entire business of the corporation, including that which is interstate, and on its entire property, including that in other States; and this because the capital stock of the corporation represents all its business of every class and all its property wherever located.

" 6. When tested, as it must be, by its substance—its essential and practical operation—rather than its form or local characterization, such a license fee or excise is unconstitutional and void as illegally burdening interstate commerce and also as wanting in due process because laying a tax on property beyond the jurisdiction of the State." *International Paper Co.* v. *Massachusetts*, 246 U. S. 135, 141.

All plaintiff's business, intrastate and interstate, and all its property wherever located were represented by the 50,485 shares of stock outstanding. The annual fee demanded by the state officers is five cents per share on 400,000 shares, and that fixed by the lower court is based on 298,520 shares. The inevitable effect of the act is to tax and directly burden interstate commerce of foreign corporations permitted to do business in Ohio, and engaged in interstate commerce, wherever the number of shares authorized, subject to the charge of five cents each, exceeds the number of outstanding shares attributable to or represented by the corporation's property and business in that State. In this case, the fee fixed by the commission was based on nearly eight times the number of outstanding shares and that determined by the court on nearly six times that number. As some of the outstanding shares are represented by plaintiff's interstate business, the application of the rate to all the shares, or to a number greater than the total outstanding, necessarily amounts to

a tax and direct burden upon all the property and business including the interstate commerce of the plaintiff. *International Paper Co.* v. *Massachusetts, supra,* 142. We hold that the act violates the commerce clause.

The fee determined by the lower court, as well as that fixed by the state officers, is arbitrary. Without holding that such a charge must be measured by the value of the privilege for which it is imposed, it may be said that some relation to such value is a reasonable requirement. Indeed, under the constitution and laws of Ohio, a tax on privileges and franchises cannot exceed the reasonable value of the privilege or franchise originally conferred or its continued annual value thereafter. *Southern Gum Co.* v. *Laylin,* 66 Oh. St. 578. That value depends on the " property owned and used and business transacted " in Ohio. § 8728–11. Plaintiff's authority to issue stock or the number of shares it may have outstanding at any time does not depend upon the laws of Ohio. Under the laws of Delaware where the corporation was organized, these matters are left to the discretion of the persons controlling the corporation. Laws of Delaware 1917, c. 113, § 3; Revised Code, c. 65, 1918a, § 4a. The number of non-par value shares of the corporation is not an indication of, and does not purport to be a representation as to, the amount of its capital. Each outstanding share represents merely an aliquot part of its assets. The number of shares not subscribed or issued has no relation to the privilege held by plaintiff in Ohio, and it is not a reasonable measure of such a fee. Such shares may never be subscribed or issued, or additional shares may be issued to acquire property or do business in other States or to carry on interstate commerce. Plainly the fee, to the extent that it is based on a number of shares in excess of those outstanding, has no relation to what was paid in for the stock or to its value or to the amount of plaintiff's capital, its property or its business,

intrastate in Ohio or interstate. The act in its practical operation does not require like fees for equal privileges held by foreign corporations in Ohio under the same circumstances. Unless, under the laws of the States where organized they chance to be authorized to issue the same number of non-par value shares, the annual franchise fees imposed on foreign corporations having the same amount of property and business, and exercising the same privileges in Ohio will not be the same; and the charge imposed on one may be many times that made against another. If plaintiff's authorized shares were of the par value of $100 each, the amount of capital stock for apportionment between its property and business in Ohio and its interstate business to arrive at the franchise fee would be $40,000,000; and, adopting the basis of apportionment determined by the lower court which attributed about 75 per cent. of the shares to the property and business in Ohio, the amount of the fee would be $44,778; and with par value of $7 each,—the amount for which the Commissioner of Securities authorized plaintiff to sell its shares in Ohio, and their admitted value,—the amount for such apportionment would be $2,800,000, and the fee would be $3,134.46.[2] These figures are to be contrasted with $14,926, fixed by the lower court. Again, compare two corporations organized in a sister State having the same number of authorized non-par value shares, one having property and business of little value, all in Ohio, and the other having much more property and business in that State, and also much property and business in other States. The act would require the former to pay five

[2] If par value were $100:

298,520 x $100=$29,852,000

$29,852,000 x 3/20 of 1%=$44,778 amount of tax.

If par value were $7:

298,520 x $7=$2,089,640

$2,089,640 x 3/20 of 1%=$3,134.46 amount of tax.

cents per share on all its shares, but would require the latter to pay a fee based only on the proportion of its shares representing its property owned and used and business transacted in Ohio.

It is clear that the mere number of authorized non-par value shares is not a reasonable basis for the classification of foreign corporations for the purpose of determining the amount of such annual fees. Such a classification is not based on anything having relation to the purpose for which it is made. *Southern Ry. Co.* v. *Greene,* 216 U. S. 400, 417; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415. The act has no tendency to produce equality; and it is of such a character that there is no reasonable presumption that substantial equality will result from its application. *Martin* v. *District of Columbia,* 205 U. S. 135, 139; *Gast Realty Co.* v. *Schneider Granite Co.,* 240 U. S. 55, 58; *Kansas City Southern Ry. Co.* v. *Road Improvement District,* 256 U. S. 658, 660. The act violates the equal protection clause of the Fourteenth Amendment.

Plaintiff's motion for a temporary injunction should have been granted.

*Decree reversed.*