STATE EX REL. BORDEN COMPANY, Respondent, vs. DAM-
MANN, Secretary of State, Appellant.

*February 4—March 5, 1929.*

For the appellant there was a brief by the *Attorney General* and *T. L. McIntosh,* assistant attorney general, and oral argument by *Adeline J. Meyer,* assistant attorney general.

For the respondent there was a brief by *Olin & Butler* and *Byron H. Stebbins,* all of Madison, and oral argument by *Mr. Stebbins.*

DOERFLER, J.   Sec. 226.02, Stats. (formerly sec. 1770*b*), provides in part as follows:

"(2) No corporation, incorporated or organized otherwise than under the laws of this state, . . . shall transact business or acquire, hold, or dispose of property in this state until such corporation shall have caused to be filed in the office of the secretary of state a copy of its charter, articles of association or incorporation and all amendments thereto. . . .

"(3) Such corporation . . . shall make and forward to the secretary of state, with the articles of association or incorporation above provided for, a statement duly sworn to, stating: . . .

"(h) That such corporation as a condition of its being permitted to begin or continue doing business within this state, shall comply with all the laws of the state with regard to foreign corporations.

"(4) Such corporation shall pay into the office of the secretary of state, upon filing its articles of association or incorporation, a fee of twenty-five dollars, and one dollar for

every one thousand dollars of its capital stock exceeding twenty-five thousand dollars employed or to be employed in this state, as shown by its sworn statement.

"(5) All amendments to the articles of association or incorporation made subsequent to the first filing with the secretary of state shall be certified to and filed in the same manner as the articles of association or incorporation, and shall be so filed within thirty days after the same have been filed with the secretary of state or other proper officer of the state wherein the corporation is organized. For filing such amendment the corporation shall pay to the secretary of state a fee of ten dollars except in case of amendment increasing capital stock, in which case the fee for filing shall be in addition to ten dollars, one dollar for each additional one thousand dollars of the increased capital stock to be used in this state, as shown by a sworn statement to be filed with the amendment increasing the capital stock, which said statement shall be signed by the president, secretary, treasurer or general manager of the corporation, and shall state the proportion of the increased capital stock to be represented in this state; . . . In case of failure to file amendment, as above stated, the corporation shall pay to the secretary of state, on filing said amendment, a penalty of twenty-five dollars.

"(6) . . .

"(7) Every foreign corporation which has heretofore filed with the secretary of state a copy of its charter or articles of association or incorporation or which shall hereafter file the same as required by this act, and every foreign corporation transacting business in this state shall annually, between the first day of January and the first day of April, file with the secretary of state a report sworn to by the president, secretary, treasurer or general manager of the corporation, as of the first day of January, which shall state:

"(a) to (d) . . .

"(e) The proportion of the authorized capital stock represented in the state of Wisconsin by its property located and business transacted therein during the preceding year. In determining the proportion of authorized capital stock employed in the state, the same shall be computed by taking the gross business in dollars of the corporation in the state and add the same to the full value in dollars of the property of

the corporation located in the state. The sum so obtained shall be the numerator of a fraction of which the denominator shall consist of the total gross business in dollars of the corporation, both within and without the state, added to the full value in dollars of the entire property of the corporation, both within and without the state. The fraction so obtained shall represent the proportion of the authorized capital stock represented within the state. The secretary of state may demand, as a condition precedent to the filing of such report, such further figures, information and statements as he may deem proper in order to determine the accuracy of the reports submitted; the additional information so obtained shall not become a matter of record in the department of state. The corporation shall pay a fee of two dollars for filing such report. In case said report shows that said corporation employs in this state a proportion of its authorized capital stock in excess of twenty-five thousand dollars, said corporation shall pay to the secretary of state, at the time of the filing of said report, an additional fee of one dollar for each one thousand dollars of such excess, except that the said corporation shall receive a credit for the proportion of its authorized capital stock already paid for in excess of twenty-five thousand dollars.

"(f) That such corporation as a condition of its being permitted to begin or continue doing business within this state, shall comply with all the laws of the state with regard to foreign corporations. . . ."

In 1919 the section which is now 226.02 (7) (e), Stats., was known as sec. 1770*b* (7) (e), and in that year the latter was amended by ch. 485 of the Laws of 1919, so that wherever the words "capital stock" were used they were preceded by the word "authorized." The sole issue, therefore, presented in this case consists of whether said amendment is constitutional.

Plaintiff argues that ch. 485 of the Laws of 1919 is unconstitutional, first, because it offends against the equal protection clause of the Fourteenth amendment of the federal constitution; second, because it is repugnant to the commerce

clause of the federal constitution; and third, because it operates to tax property beyond the territorial jurisdiction of the state, it violates the due process clause of the Fourteenth amendment. The issues thus raised are based upon alleged violations of the provisions of the federal constitution, and if the supreme court of the United States had determined such issues on principle, then it becomes the duty of this court to recognize the law as so established and to abide thereby, regardless of whether our individual views may or may not coincide with those expressed by the high federal court.

At the outset it may be conceded that corporations are not "citizens" of the United States in the sense in which that term is used in sec. 1 of the Fourteenth amendment of the federal constitution, where it is said: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The term "citizen" as so used contemplates natural-born citizens or naturalized citizens. *Paul v. Virginia,* 8 Wall. (75 U. S.) 168. It may also be conceded that a foreign corporation is not possessed of an inherent right to transact business in a state or in states other than the state of its creation, and that the foreign state to which it applies for admission to do intrastate business has broad powers of prohibiting it from entering within the confines of the state for that purpose, and of regulating or excluding it after it has once been admitted.

In *Hanover Fire Ins. Co. v. Harding,* 272 U. S. 494, 47 Sup. Ct. 179, it is said:

"It was settled in *Bank of Augusta v. Earle,* 13 Pet. 519; *Paul v. Virginia,* 8 Wall. 168; *Ducat v. Chicago,* 10 Wall. 410, and *Horn Silver Mining Co. v. New York,* 143 U. S. 305, 12 Sup. Ct. 403, that foreign corporations cannot do business in a state except by the consent of the state; that the state may exclude them arbitrarily or impose such conditions as it will upon their engaging in business within its jurisdic-

tion. But there is a very important qualification to this power of the state, the recognition and enforcement of which are shown in a number of decisions of recent years. That qualification is, that the state may not exact as a condition of the corporation's engaging in business within its limits that its rights secured to it by the constitution of the United States may be infringed. This is illustrated, in respect of the breach of the commerce clause of the constitution, by the cases of *Sioux Remedy Co. v. Cope,* 235 U. S. 197, 203, 35 Sup. Ct. 57, and *Looney v. Crane Co.* 245 U. S. 178, 188, 38 Sup. Ct. 85. It is illustrated in cases in which a provision of a state law revoking the license of a foreign corporation for exercising its constitutional right to remove suits brought against them from the state courts to the federal courts, has been held void (*Terral v. Burke Const. Co.* 257 U. S. 529, 42 Sup. Ct. 188); in cases in which the state has vainly attempted to subject foreign corporations to a payment of a tax which is a tax not only on the property of the corporation in the state but also on its property without the state, in violation of the due process clause of the Fourteenth amendment (*W. U. Tel. Co. v. Kansas,* 216 U. S. 1, 30 Sup. Ct. 190; *St. Louis C. C. Co. v. Arkansas,* 260 U. S. 346, 43 Sup. Ct. 125); and finally in cases of a class to which it is contended the present case belongs, where a tax or license law operates to deny to the foreign corporation the equal protection of the laws (*Southern R. Co. v. Greene,* 216 U. S. 400, 30 Sup. Ct. 287; *Air-Way E. A. Corp. v. Day,* 266 U. S. 71, 45 Sup. Ct. 12)."

In the *Harding Case, supra,* a foreign corporation authorized to do business in a state other than that of its origin is termed a *quasi*-citizen, evidently in recognition of the rights secured to it under the federal constitution, and under which it is entitled to protection.

First we will consider whether, under the decisions of the federal supreme court, ch. 485 of the Laws of 1919 in principle violates the equal protection clause of the United States constitution. In the case of *Air-Way E. A. Corp. v. Day,* 266 U. S. 71, 45 Sup. Ct. 12, the plaintiff was a Delaware

corporation and had an authorized capital stock without par value of 400,000 shares. It applied to the state of Ohio for a certificate to do business in that state, and such certificate was issued to it, and it paid the initial fee for the privilege of exercising its franchise in that state. From the report of the corporation made in July, 1921, it appears that there were outstanding 50,485 duly issued shares of stock; that all of its property was located in Ohio, and that it was of the value of $485,278.56; that the business transacted during the preceding year amounted to $250,594.58; that sec. 8728–11 of the Ohio General Code, enacted May 17, 1921 (109 Ohio Laws, p. 277), provides:

"The amount of fees payable by a foreign corporation having common stock without par value . . . under section 5503 shall be three twentieths of one per cent. upon the proportion of the authorized preferred stock represented by property owned and used and business transacted in this state and five cents per share upon the proportion of the number of shares of authorized common stock, represented by property owned and used and business transacted in this state. . . ."

That of the amount of business transacted during the preceding year, $70,802.30 represented the intrastate business in Ohio, and the balance of the business, viz. seventy-two per cent., was interstate business. The plaintiff invoked equity jurisdiction on the ground that it was threatened with irreparable injury through the enforcement of the coercive provisions of the Ohio statutes. In the opinion in that case it was held:

"Plaintiff's authority to issue stock, or the number of shares it may have outstanding at any time, does not depend upon the laws of Ohio. Under the laws of Delaware, where the corporation was organized, these matters are left to the discretion of the persons controlling the corporation. . . . The number of nonpar-value shares of the corporation is not an indication of, and does not purport to be a representation as to, the amount of its capital. Each outstanding share

represents merely an aliquot part of its assets. The number of shares not subscribed or issued has no relation to the privilege held by plaintiff in Ohio, and it is not a reasonable measure of such a fee. Such shares may never be subscribed or issued, or additional shares may be issued to acquire property or do business in other states, or to carry on interstate commerce. Plainly the fee, to the extent that it is based on a number of shares in excess of those outstanding, has no relation to what was paid in for the stock, or to its value, or to the amount of plaintiff's capital, its property, or its business, intrastate in Ohio or interstate. The act, in its practical operation, does not require like fees for equal privileges held by foreign corporations in Ohio under the same circumstances. Unless, under the laws of the states where organized, they chance to be authorized to issue the same number of nonpar-value shares, the annual franchise fees imposed on foreign corporations having the same amount of property and business, and exercising the same privileges in Ohio, will not be the same; and the charge imposed on one may be many times that made against another. . . .

"It is clear that the mere number of authorized nonpar-value shares is not a reasonable basis for the classification of foreign corporations for the purpose of determining the amount of such annual fees. Such a classification is not based on anything having relation to the purpose for which it is made. *Southern R. Co. v. Greene,* 216 U. S. 400, 417, 54 Lawy. Ed. 536, 541, 30 Sup. Ct. 287, 17 Ann. Cas. 1247; *F. S. Royster Guano Co. v. Virginia,* 253 U. S. 412, 415, 64 Lawy. Ed. 989, 990, 40 Sup. Ct. 560."

The decision in the *Air-Way Corporation Case, supra,* in which it was held that the Ohio law was unconstitutional on the ground that it offended against the equal protection clause of the federal constitution, was affirmed in the case of *Roberts & Schaefer Co. v. Emmerson,* 271 U. S. 50, 46 Sup. Ct. 375, and in *Hanover Fire Ins. Co. v. Harding,* 272 U. S. 494, 47 Sup. Ct. 179. Such decision was followed in *O'Gara Coal Co. v. Emmerson,* 326 Ill. 18, 156 N. E. 814; *Great Northern R. Co. v. State,* 147 Wash. 630, 267 Pac. 506, and a number of other state cases,

The trial court, by an illustration, clearly demonstrated the inequality of the tax and the violation of the amendment of the equal protection clause of the federal constitution. In substance it recited in its opinion that the tax of $2,393 was based on $100,000,000 *authorized* capital stock, less than $50,000,000 of which had been actually subscribed or issued, while another foreign corporation possessing the same assets, business, and outstanding capital stock, but having only $50,000,000 of authorized capital stock, is required to pay about one half of such tax; that such amendment discriminates between foreign corporations, and therefore denies the equal protection of the law. This illustration of the lower court was based largely upon the opinion in the case of *O'Gara Coal Co. v. Emmerson, supra.*

In view, therefore, of the decision in the *Air-Way Corporation Case, supra,* it becomes obligatory upon this court to hold that the foregoing amendment of the Wisconsin statutes violates the equal protection clause of the Fourteenth amendment of the federal constitution.

It is next contended by plaintiff's counsel that ch. 485 of the Laws of 1919 is repugnant to the commerce clause of the United States constitution, in that it imposes a direct burden on interstate commerce. This position is also supported by the decision in the case of *Air-Way Corporation v. Day, supra,* and in the opinion in that case the court quotes the following from *International Paper Co. v. Massachusetts,* 246 U. S. 135, 38 Sup. Ct. 292:

"1. The power of a state to regulate the transaction of a local business within its borders by a foreign corporation— meaning a corporation of a sister state—is not unrestricted or absolute, but must be exerted in subordination to the limitations which the constitution places on state action.

"2. Under the commerce clause exclusive power to regulate interstate commerce rests in Congress, and a state statute which either directly or by its necessary operation bur-

dens such commerce is invalid, regardless of the purpose with which it was enacted.

"3. Consistently with the due process clause, a state can-not tax property belonging to a foreign corporation, and neither located nor used within the confines of the state.

"4. That a foreign corporation is partly, or even chiefly, engaged in interstate commerce, does not prevent a state in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the state cannot require the corporation, as a condition of the right to do a local business therein, to submit to a tax on its interstate business or on its property outside the state.

"5. A license fee or excise of a given per cent. of the en-tire authorized capital of a foreign corporation doing both a local and interstate business in several states, although declared by the state imposing it to be merely a charge for the privilege of conducting a local business therein, is essentially and for every practical purpose a tax on the entire business of the corporation, including that which is interstate, and on its entire property, including that in other states; and this because the capital stock of the corporation represents all its business, of every class, and all its property, wherever located.

"6. When tested, as it must be, by its substance—its essential and practical operation—rather than its form or local characterization, such a license fee or excise fee is unconstitutional and void as illegally burdening interstate commerce, and also as wanting in due process because laying a tax on property beyond the jurisdiction of the state."

In the opinion in the *Air-Way Corporation Case, supra,* it is further said:

"All plaintiff's business, intrastate and interstate, and all its property, wherever located, were represented by the 50,485 shares of stock outstanding. The annual fee demanded by the state officers is five cents per share on 400,000 shares, and that fixed by the lower court is based on 298,520 shares. The inevitable effect of the act is to tax and directly burden interstate commerce of foreign corporations per-

mitted to do business in Ohio, and engaged in interstate commerce, wherever the number of shares authorized, subject to the charge of five cents each, exceeds the number of outstanding shares attributable to or represented by the corporation's property and business in that state. . . . As some of the outstanding shares are represented by plaintiff's interstate business, the application of the rate to all the shares, or to a number greater than the total outstanding, necessarily amounts to a tax and direct burden upon all the property and business, including the interstate commerce, of the plaintiff."

In the case of *Cudahy Packing Co. v. Hinkle* (U. S.) 49 Sup. Ct. 204, our attention has been called to an opinion reported in the United States Daily, in its issue of Tuesday, February 19, 1929, and handed down by the supreme court of the United States on the day previous. In that case it is said:

"Appellant is incorporated under the laws of Maine. Its authorized capital stock is $45,000,000. Less than $30,000,000 has been issued and the total value of the corporate property does not exceed that sum. It does an extensive business in meats and foodstuffs throughout the Union and abroad.

"During 1916 when the capital stock was $20,000,000 the articles of incorporation were duly filed with the proper state officer and the corporation began to carry on closely associated interstate and intrastate business in Washington. Its property therein is now worth $40,000. Gross sales by the corporation for the year ended October 31, 1926, were $231,750,000. Of these $1,313,275 were made in Washington, less than half being intrastate. . . .

"Filing fees because of the increased capital and license taxes for 1927, both reckoned upon the *authorized* capital stock, were demanded of appellant. Penalties for failure to comply were threatened. . . .

"Sec. 3836 (as amended by ch. 149, Extraordinary Session of 1925) directs that every local and foreign corporation required by law to file its articles with the secretary of state shall pay graduated filing fees, not above $3,000,

reckoned upon its *authorized* capital stock." (Italics herein ours.)

Upon the hearing before the federal supreme court the respondents relied largely upon the case of *Baltic Mining Co. v. Massachusetts,* 231 U. S. 68, 34 Sup. Ct. 15. In the opinion in the *Cudahy Case, supra,* it is said:

"*Baltic Mining Co. v. Massachusetts* had sometimes been regarded as lending support to the theory that a tax which really burdens interstate commerce and reaches property beyond the state may be sustained if relatively small. This view did not harmonize with the principles approved by *Looney v. Crane Co.* 245 U. S. 178, 38 Sup. Ct. 85, and was expressly disapproved by *Alpha Portland Cement Co. v. Massachusetts,* 268 U. S. 203, 45 Sup. Ct. 477."

It is also said (quoting from the *Alpha Portland Cement Co. Case, supra*):

"The amount demanded is unimportant when there is no legitimate basis for the tax. So far as the language of *Baltic Mining Co. v. Massachusetts,* 231 U. S. 68, 87, 34 Sup. Ct. 15, tends to support a different view, it conflicts with conclusions reached in later opinions and is now definitely disapproved."

The opinion holds that the statute which directs the payment of a tax on authorized capital stock offends against the commerce clause of the federal constitution and is therefore unconstitutional and void.

Plaintiff's counsel further contend that ch. 485, Laws of 1919, violates the due process clause of the Fourteenth amendment of the federal constitution, since it operates to tax property beyond the territorial jurisdiction of the state. Having concluded that it taxes property in interstate commerce, it follows that it must also be held unconstitutional upon this ground.

*By the Court.*—The order of the lower court is affirmed.