# CHARLESTON.

State *v.* Azel Meadows Realty Company *et al.*

(No. 6559)

Submitted October 16, 1929. Decided November 5, 1929.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

*Wright Hugus, J. E. Bruce, R. T. Jennings, Jr.,* and *Schmidt, Hugus & Laas,* for appellant.

LIVELY, JUDGE:

Appellant, the Wheeling Steel Corporation, a foreign corporation, in the court below and on this appeal, attacks the constitutionality of sections 126 and 130, chapter 32, Barnes' Code, 1923, which fixed the annual charter license tax on foreign corporations for the privilege of holding property and doing business in this state, as said sections were applied by the auditor in computing its license tax for the fiscal year beginning July 1, 1927.

The auditor of state for the fiscal year beginning July 1, 1927, assessed the tax to be paid by appellant at $5,640.00;

appellant tendered in full payment $3,873.57 (plus $10.00 statutory fee for services of resident agent) which the auditor refused to accept, and in this, the annual suit to cancel the right of such delinquent corporations to hold property and do business in this state, the appellant attacks the constitutionality of the statute on the alleged ground, that the same is void, because in contravention of the due process, equal protection, and interstate commerce provisions of the constitution of the United States, as well as in violation of Article 10, section 1 of the constitution of this state, which provides for equal and uniform taxation. The lower court decreed in favor of the state against appellant in the amount of license tax and penalties due at the time of the institution of the suit, namely, $4,217.86, and this appeal followed.

Section 130, chapter 32, Code 1923, provides that a foreign corporation admitted to the state shall report under oath to the auditor of state: (1) its corporate name, where and when incorporated, when admitted to the state, location of its principal office, and names and addresses of certain officers including the agent of record in this state; (2) number of shares of authorized capital stock and par value of each share; (3) number of authorized shares of stock having no par value and the consideration fixed for the issuance of each share; (4) "the value of the property owned and used by such corporation within this state, where situate, of what it consists, and the number of acres of land it holds in this state; and the value of its property owned and used without this state"; and (5) "the proportion of its capital stock which is represented by property owned and used in the state of West Virginia." The section then provides: "It shall be the duty of the auditor to assess and fix the license tax of such corporation according to the proportion of its capital stock which is represented by its property owned and used in this state which license tax shall be at the rate prescribed in section 3 of this Act (section 126 of this chapter) plus fifty percentum of such tax." The auditor may require such additional information as he may deem necessary to enable him to assess and fix the just amount of license taxes. Said section 126 of that chapter fixes the annual license tax on domestic corporations based

on the authorized capital stock, according to the graduated scale therein set out describing in amount of tax as the authorized capital stock increases in number of shares.

At the date of the assessment of the license tax complained of, appellant's authorized shares of capital stock were 1,000,000 of the par value of $100.00 each share, or $100,000,-000 par value of the entire authorized capital stock; and there had been issued and outstanding 670,135 shares representing a par value of $67,013,500. It reported the value of its entire property within and without the state at $92,083,-294 and that its property in this state was valued by it at $21,929,220, the remainder of its property situate without the state was valued at $70,154,074. The auditor found that the proportion of its capital stock represented by its property in this state was 23.8 per centum or 23,800 shares on which basis license tax should be computed, and he computed the tax in the manner prescribed in section 126, chapter 32, Code, at $5,640, taking as a basis therefor 23,800 shares of authorized capital stock. The decree fixed the amount due at the date of the institution of the suit, including penalties, at $4,217.86.

Appellant was admitted to the state as a foreign corporation in the year 1920. It is stipulated between the parties that the tax here involved is a charter license tax on appellant, a foreign corporation, for the privilege of holding property and doing business in this state, and is in no wise a property tax.

Appellant asserts that said sections 126 and 130 unreasonably discriminate between domestic and foreign corporations in the amount of license tax imposed, inasmuch as they fix a higher rate of tax on the foreign corporations than on domestic corporations exercising the same privileges, and therefore violate the equal protection clause of the Fourteenth Amendment to the Federal Constitution. It will be observed that the auditor based the amount of the privilege tax on the *authorized* capital stock and not upon the shares issued and outstanding; and hence that a foreign corporation upon being admitted, and yearly thereafter, should pay 50% more than the domestic corporation for the same number of authorized shares of capital stock. To illustrate: a domestic corporation

having an authorized capital stock of 200,000 shares would pay annually a privilege tax of $150.00; while a foreign corporation whose proportionate amount of its authorized capital stock, ascertained by its property owned and used in this state, equalled 200,000 shares would pay $225.00. (Non par stock is not here involved.) The proposition of the appellant may be stated in this way: Can a state impose upon a foreign corporation a higher privilege tax for admission to the state to hold property and do business than it imposes upon a corporation created under its own laws without violating the federal and state constitutions? It will be observed that corporations under our statute are divided into two classes, foreign and domestic. Domestic corporations are further classified as non-resident and resident. Where domestic and foreign corporations are thus classified, foreign corporations may be discriminated against by imposing upon them heavier license tax than on domestic corporations. Cooley, Taxation, (14th Ed.), Vol. 1, section 359. Such has been the view of that great tribunal, the United States Supreme Court, from the early case of *Paul* v. *Virginia*, (8 Wall. 168), 19 L. Ed. 357, down to *Horn Silver Mfg. Co.* v. *New York*, 36 L. Ed. 164, where it is said that "the doctrine (right of a state to impose conditions on a foreign corporation entering it) has been so frequently declared by this Court that it must be deemed no longer a matter of discussion, if any question can ever be considered at rest." It was there held that a foreign corporation cannot claim a right to do business in another state except subject to the conditions imposed by its laws; and a tax levied only upon the franchise or business of a foreign corporation is not a tax on interstate commerce. Various other cases, both state and federal, too numerous to mention, reiterate this doctrine. In *Garr, S. & Co.* v. *Shannon*, (1908) Tex. Civ. App. 634, 115 S. W. 361, it was held that a franchise or license tax equal on all foreign corporations of the same class was not invalid on the ground that a lesser tax was imposed on domestic corporations. This decision was affirmed .(in 1912) in 223 U. S. 468, 56 L. Ed. 510, without a discussion of the point now under consideration. Appellant relies upon *Southern Ry. Co.* v. *Greene*, (1910) 216 U. S. 400, 54 L. Ed.

536; and *Hanover Fire Ins. Co. v. Carr,* (1926) 272 U. S. 494, 71 L. Ed. 372, as an exception to or modification of the above firmly fixed doctrine. In *Railway* v. *Greene,* relied upon, the statute complained of was passed after the railway had been admitted to the state and had acquired large permanent properties, and undertook to levy a further privilege tax on the railway company because it was a foreign corporation, but not imposing a like tax on domestic corporations doing precisely the same business. The equal protection of the laws was thus violated. That is not the situation here, for the statute has not been changed since appellant entered the state in 1920, and imposes upon it no new burden. It may be observed that in the later case of *Baltic Mining Co.* v. *Mass.,* 246 U. S. 147, 58 L. Ed. 127, the court reiterated the doctrine that "no limitation upon the power of a state to exclude foreign corporations requires identical taxes in all cases upon domestic and foreign corporations." In *Hanover* v. *Carr,* relied upon, *supra,* Mr. Chief Justice Taft said: "With respect to the admission fee, so to speak, which the foreign corporation must pay to become a *quasi* citizen of the state and entitled to equal privileges with citizens of the state, the measure of the burden is in the discretion of the state, and any inequality as between the foreign corporation and the domestic corporation in that regard does not come within the inhibition of the Fourteenth Amendment; but it was held that after its admission, the foreign corporation stands equal and is to be classified with domestic corporations of the same kind." The court there held, if we properly interpret that opinion, that the tax imposed under section 30 of the Illinois Act was not a mere admission tax but was in the nature of a property tax, and domestic corporations of the same class and in the same business were required to pay a much lesser tax on the same property; and such statute, therefore, was a denial to the foreign corporation of the equal protection of the laws. In the instant case it is stipulated that no property tax is involved. In the later case of *Cheny Bros.* v. *Mass.,* (1918) 62 L. Ed. 632, the Supreme Court of the United States reiterates that "a state may impose a rate of taxation upon a foreign corporation for the privilege of doing business within

the state which differs from the rate that it applies to its own corporations upon the franchises which the state grants in creating them.'' We conclude that the statute is not violative of the Federal Constitution, because it requires of foreign corporations a larger license tax on the privilege of doing business and holding property in the state, than it requires from domestic corporations.

Appellant further asserts that said sections 126 and 130, chapter 32, Code, are in direct violation of Article 10, section 1 of the constitution of this state, which provides for taxation of all privileges and franchises of persons and corporations by uniform and equal laws; and of the equal protection clause of the 14th Amendment to the Federal Constitution. It is urged that inequality and discrimination results as between foreign corporations if the authorized shares of capital stock be used for computation (as done by the auditor) ''according to the proportion of its authorized capital stock which is represented by its property owned and used in this state.'' To illustrate the claimed inequality and discrimination as between foreign corporations, appellants say that a foreign corporation with an authorized capital stock of 50,000 shares of the par value of $100.00 per share which owned and used in this state 23.8% of its entire property, would pay a different tax than a foreign corporation of 200,000 shares of authorized stock of the par value of $100.00; and if, perchance, the entire property of each of the supposed corporations was $92,083,324 then the fifty million dollar corporation would pay a license tax of $2,962.50 while the two hundred million dollar corporation would pay $10,995.00. Thus the fifty million corporation would pay $2,962.50; the appellant with 100 million would pay $5,640 and the 200 million corporation would pay $10,995.00. We have not verified these calculations but it appears to us that if appellant paid $5,640.00 (its capital being 100 million), another like corporation with one-half that authorized capitalization would pay one-half as much, or $2,820.00, and a corporation of 200 million would pay twice as much as appellant, or $11,280.00. But the figures serve only to illustrate that each corporation would pay according to the number of its authorized shares, a different sum for

exactly the same privilege, namely, that of entering the state and holding 23.8% of its entire property herein. The state, as construed by the auditor, has said to foreign corporations that they will be admitted to do business and hold property in the state upon paying annually a tax computed on the authorized capital stock in proportion to the percentage which its property in the state bears to its entire property. Does this construction in its practical operation bring about inequality and discrimination as between foreign corporations?

The license tax of domestic corporations is assessed upon the amount of authorized stock, a flat rate, and is not varied in accordance with the property owned in the state or elsewhere. Indeed, if a domestic corporation has no property in the state, it must pay on its authorized capital, and not on its actual capital stock issued. To hold that the statute means that a foreign corporation shall pay only on the basis of its actual issued stock and at the same time require the domestic corporation to pay on the basis of its authorized stock, would seem to be a discrimination in favor of the foreign corporation as against the domestic. But that does not render the act unconstitutional, for it is quite well settled that in the matter of privilege taxes such discriminations may be made. The corporations are in different and reasonable classifications. And, moreover, the domestic corporation is created by the laws of the state, and is subject to any reasonable method for measuring its license privileges. All domestic corporations are treated alike. As was said in *Roberts* v. *Emerson*, (U. S.) 70 L. Ed. 827, 833: "We cannot say that a state may not impose a franchise tax on a domestic corporation, measured by its authorized capital stock." But we have wandered from the point under consideration; namely, the discrimination and inequality brought about by the statute, as applied, between foreign corporations. This has been settled by the Supreme Court of the United States, and we are bound by the decisions of that Court in such matters, however much our own conclusions might differ. We think *Air-Way Elec. App. Corp.* v. *Day*, 266 U. S. 71, 69 L. Ed. 169, controls here. It was there held that the number of shares of stock of a foreign corporation which are authorized but not issued is not a

reasonable measure of the fee which may be imposed upon it for the privilege of doing business in the state, and hence, when used as a measure, violates the equal protection clause of the Federal Constitution. This holding was approved in *Roberts, etc.* v. *Emerson,* 271 U. S. 50, 70 L. Ed. 827, 45 A. L. R. 1495, *supra,* which upheld a like basis for assessing privilege tax on *domestic* corporations. In discussing the decision in the *Air-Way Case,* Justice Stone said: "While one factor in the computation of the tax was properly the proportion of the corporation's business done and property owned within the state, the other factor was the amount of its authorized capital stock, only a part of which had been issued. The authority to issue its capital stock was a privilege conferred by another state, and bore no relation to any franchise granted to it by the state of Ohio or to its business or property within that state. When authorized capital stock is taken as the basis of the tax, variations in the amount of the tax are obtained, according as the corporation has a large or small amount of unissued capital stock. This was held, in the *Air-Way Case,* to be an unconstitutional discrimination, since it resulted in a tax larger than the tax imposed upon other corporations with like privileges and like business and property within the state, but with a smaller capital authorized under the laws of the state of their creation." And in the later case of *People* v. *Latrobe,* (1929) Supreme Court Reporter, Vol. 49, 377, which upheld a New York statute imposing a license tax on foreign corporations based on that proportion of its *capital* stock which its gross assets employed in the state bore to its gross assets wherever employed, again the language of the *Air-Way Case* was repeated, and it was pointed out that the New York statute then under consideration used the number of shares actually issued as a factor, whereas, in the Ohio statute condemned in the *Air-Way Case,* the tax was based on the mere authority to issue stock conferred by another state and not fully exercised. And in *Hanover* v. *Carr,* 272 U. S. 494, 71 L. Ed. 372, 49 A. L. R. 713, the *Air-Way* decision was again adverted to as holding that a tax imposed on a basis of authorized capital stock was arbitrary, and not based on a classification of foreign corpora-

tions having any reasonable basis. The *Air-Way* decision has been followed in *O'Gara, etc.* v. *Emerson*, 326 Ill. 18, 156 N. E. 814; *Great Northern Ry. Co.* v. *State*, 147 Wash. 630, 267 Pac. 506; and *State ex rel. Borden* v. *Dammann*, (Wis.) 224 N. W. 139. The state's counsel in their well prepared brief seek to distinguish the *Air-Way Case* on the ground that the Ohio statute and the West Virginia statute are dissimilar, in this, that the Ohio statute related to non-par stock, and one of the elements in fixing the tax was the business done in the state of Ohio, whereas, our statute does not take into consideration the business done. As we analyze the *Air-Way* opinion, the business done, and the non-par character of the stock, was of little consequence. The controlling factor was the use of authorized capital stock to determine the amount of franchise tax. Whether the stock is non-par value or of a fixed par value, the principle announced in the *Air-Way Case* applies. *O'Gara* v. *Emerson*, 326 Ill. 18, *supra;* and *State ex rel. Borden* v. *Dammann*, 224 N. W. 139, *supra.* In this connection it may be well to quote from the *Air-Way Case* the language found on page 177 of 69 L. Ed.: ''The number of shares not subscribed or issued has no relation to the privilege held by plaintiff in Ohio and it is not a reasonable measure of such a fee. Such shares may never be issued, or additional shares may be issued to acquire property or do business in other states, or to carry on interstate commerce. Plainly the fee, to the extent that it is based on a number of shares in excess of those outstanding, has no relation to what was paid in for the stock, or to its value, or to the amount of plaintiff's capital, its property, or its business. The act in its practical operation does not require like fees for equal privileges held by foreign corporations in Ohio under the same circumstances.''

Under the federal decisions cited, we are constrained to hold that our statute, under consideration, as construed and applied by the auditor of the state, contravenes the equal protection clause of the Fourteenth Amendment to the United States Constitution as beween foreign corporations admitted to do business and hold property in the state. The courts will always give to a statute such construction as will render

it constitutional if possible under its wording and intent. *Hope Gas Co.* v. *Hall,* 102 W. Va. 272. It will be noted that section 130, chapter 32, Code, directs the auditor to assess the license tax according to the proportion of its *capital* stock (does not use the word "authorized") which is represented by its property owned and used in this state, which tax shall be at the rate prescribed in section 126 of that chapter. The rate in that section may be easily computed on the issued capital stock. The appellant has tendered its tax so computed. The decree fixing the recovery at $4,217.86 will be reversed in that particular, and the cause remanded.

*Reversed and remanded.*