**LEECRAFT, State Treasurer of Oklahoma, v. TEXAS CO.**

(Circuit Court of Appeals, Eighth Circuit. June 29, 1922.)

No. 5968.

1. **Constitutional law ⬥210—Corporation a "person," within equal protection of laws clause of Constitution.**

A corporation is a "person," within Const. Amend. 14, providing that no state shall deny to any "person" within its jurisdiction the equal protection of the laws.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Person.]

2. **Constitutional law ⬥229(1)—Taxation ⬥37—Statute imposing greater tax on foreign corporations doing business in the state than domestic corporations held denial of equal protection.**

Where a foreign corporation was doing business in the Indian Territory under Act Feb. 18, 1901, § 3, at the time of the admission into the Union

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the state of Oklahoma, and thereafter continued for more than three years prior to enactment of Rev. Laws Okl. 1910, § 7539, to do business in the state, complying with all the laws thereof relating to foreign corporations, and prior to the enactment of such statute had expended more than $2,000,000 in permanent improvements within the state consisting of pipe lines, pumping stations, steel tankage, telephone and telegraph systems, etc., the levy under such statute of a license tax of $1 for each $1000 of its capital stock employed in its business done in the state, as against a tax of only 50 cents for each $1,000 imposed on domestic corporations, *held* violative of the equal protection clause of the Fourteenth Amendment.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by the Texas Company against A. N. Leecraft, Treasurer of the State of Oklahoma. Judgment for plaintiff, and defendant brings error. Affirmed.

C. W. King, Asst. Atty. Gen. (George F. Short, Atty. Gen., and Kathryn Van Leuven, Asst. Atty. Gen., on the brief), for plaintiff in error.

C. B. Ames, of Oklahoma City, Okl. (Ames, Chambers, Lowe & Richardson, of Oklahoma City, Okl., on the brief), for defendant in error.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

KENYON, Circuit Judge. The parties will be referred to as they were designated in the trial court. Plaintiff is a corporation of the state of Texas. Defendant, at the time of the trial in the District Court, was treasurer of the state of Oklahoma.

Plaintiff was engaged in the business of producing, piping, transporting, storing, refining, and marketing crude petroleum and the products thereof, both in and out of the state. Oklahoma was admitted into the Union of States November 16, 1907. On February 18, 1901 (31 Stats. at Large, 795), Congress passed an act relating to the admission of foreign corporations into the Indian Territory to conduct business therein. Section 3 of said act is as follows:

"That foreign incorporations may be authorized to do business in the Indian Territory, under such limitations and restrictions as may be prescribed by law; and as to contracts made and business done in the Indian Territory, they shall be subject to the same regulations, limitations, and liabilities, and shall exercise no other or greater powers, privileges, or franchises than may be exercised by like corporations organized under the provisions of sections 1 and 2 of this act."

Plaintiff complied fully with the terms and conditions of this act. It carried on business in the Indian Territory, made improvements therein, and prior to the time that Oklahoma became a state laid in the Indian Territory 194 miles of pipe lines, constructed pumping stations, station sites, telephone and telegraph systems, and the appurtenances thereto; also constructed steel tankage for the storage of oil, and had expended in said investments, permanent in their nature, over $2,000,000.

Since the admission of the state, plaintiff has complied with the laws of Oklahoma relating to foreign corporations by the appointment of an agent and otherwise. It has paid its ad valorem and gross production tax and other taxes imposed upon it by the laws of the state. In carrying on its business there was no separation of the use of its facilities as between state and interstate business. On June 30, 1910, plaintiff's fixed and permanent investment in Oklahoma amounted to $3,268,992. From the time of the admission of the state up to the time of the passage of the act in question, plaintiff had expended in permanent improvements and investments over $1,000,000.

The Legislative Assembly of Oklahoma, at the session commencing January 20, 1910, passed an act effective June 17, 1910, providing as follows:

"It shall be the duty of every corporation incorporated under the laws of this state, and of every foreign corporation doing business in this state, to procure annually from the corporation commission a license authorizing the transaction of such business in this state. Each domestic corporation shall pay a license fee of fifty cents for each one thousand dollars of its authorized capital stock or less, and each foreign corporation shall pay a license fee of one dollar for each one thousand dollars of its capital stock employed in its business done in the state. * * *" Section 7539, Revised Laws of Oklahoma of 1910.

From June 30, 1910, to June 30, 1919, plaintiff complied with this act and secured the necessary authority to transact business in the state. On June 3, 1919, the Attorney General of Oklahoma notified plaintiff's attorneys that it was indebted to the state in the sum of $8,789.49, claiming the same to be due under section 7539 above quoted. The state, acting through the Attorney General, claimed that plaintiff owed on the license tax as of June 30, 1917, $4,199.15, and that it owed on the license tax as of June 30, 1918, $4,590.34; the two sums together making the total claimed. Plaintiff then, under protest, and claiming the act under which the tax was levied to be unconstitutional, paid to the state treasurer said sum, notifying him at the time that it would bring action to recover said amount. This is the action brought to recover the same. That the payment was made under protest is not questioned, nor is the right on the part of plaintiff to maintain this action raised or denied. The parties entered into an agreement as to the facts, and there is no issue of fact involved. The determinative question is reduced to a narrow limit.

Plaintiff contends that, in entering the Indian Territory, complying with the conditions of the act of Congress of February 18, 1901, paying the fees and subjecting itself to the same regulations, limitations, liabilities, powers, privileges, and franchises as domestic corporations, it secured the right to be taxed the same as domestic corporations, and that the right extended over into statehood. Section 1 of the Schedule of the Constitution of Oklahoma provides:

"No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place. * * *"

Defendant contends there was no vested right in the taxpayer to perpetually be taxed the same as domestic corporations after the Indian

Territory became a part of the state of Oklahoma, and further claims that to hold binding on the new state rights acquired by a foreign corporation doing business in the Indian Territory under laws enacted by Congress would prevent Oklahoma coming into the Union on equal footing with the original states, thus impinging upon the inherent sovereign power of the state. In other words, defendant claims that Congress cannot by contract deprive the state of any part of its sovereignty. The case of Coyle v. Oklahoma, 221 U. S. 559, 31 Sup. Ct. 688, 55 L. Ed. 853, is one of intense interest on this most important subject. In our view of the case, however, we think it unnecessary to pass on these questions, as the case, in our judgment, is ruled by the decision of the Supreme Court of the United States in Southern Railway Co. v. Greene, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247.

After the admission of the state the first Legislature met on December 2, 1907, and ended May 26, 1908. They passed no such law as is in controversy here, and did not pass such law until the session of 1910. Therefore the plaintiff was in the state of Oklahoma, proceeding according to its laws with reference to foreign corporations doing business therein, investing its money, making permanent improvements, acting under the jurisdiction of the state, and so continuing for approximately three years, apparently without question. Under the admissions of the record, as we have before pointed out, between the time that the state was admitted and the time of the passage of this act, plaintiff had expended in permanent improvements, appurtenances to their property and otherwise, over $1,000,000. This situation, we believe, is determinative of this particular case.

Plaintiff claimed in the trial court that the act of January 20, 1910, is violative of the Fourteenth Amendment to the Constitution, and denied to plaintiff the equal protection of the law. The Fourteenth Amendment provides:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[1]. How does the situation differ at all from that presented in Southern Railway Co. v. Greene, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247? There the foreign corporation had come into the state of Alabama. It had acquired property and carried on its business. It was a person within the jurisdiction of that state. It had acquired a large amount of railroad property—paid taxes on it and on its franchises. It had come into the state in compliance with its laws and was within the jurisdiction of the state. That a corporation is a person within the purview of the Fourteenth Amendment is, of course, a closed question. Pembina Mining Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650; Southern Railway Co. v. Greene, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247. A statute was passed by the state of Alabama, applying to foreign corporations a different rule of taxation than applies to domestic corporations. It was held by the Supreme Court of the United States

that to tax the foreign corporation for carrying on business under the circumstances shown, by a different and more onerous rule than was used in taxing domestic corporations for the same privilege, is a denial of the equal protection of the law, and does violence to the Fourteenth Amendment to the federal Constitution.

In the case now under consideration the situation between the time, of the admission of the state of Oklahoma and the time of the passage of the act in question is substantially identical with the situation out of which the Greene Case arose. Regardless of how the plaintiff corporation came into the state, whether it entered through the territorial door or otherwise, the fact remains that it was there at the time of the admission of the state, and remained there without question for three, years. In other words, it was there at the time of the passage of the. act in question, the same as the foreign corporation was in the state of Alabama, although it had come to be there in a different way. It had acquired, as before pointed out, a large amount of permanent property, some before and some after statehood was acquired; had its system of pipe lines between Oklahoma and other states, which pipe lines are very similar to railroads, in that they are of a permanent nature and are recognized as common carriers by act of Congress. It was subject to the jurisdiction of the state, was there in compliance with its laws, and for approximately three years before the passage and taking effect of the act in question had been carrying on its business within the state, and making its permanent investments therein, and paying all taxes assessed against it by the state.

[2] If, at the time of the adoption of the Constitution of Oklahoma, some reservation or restriction had been made as to foregin corporations, such as plaintiff, operating in the Indian Territory, or if the Oklahoma Legislature, at its first session after the state had been admitted, being the first time that the policy of the state could have been esablished, had indicated its purpose to tax such foreign corporations as plaintiff differently from domestic corporations doing the same business, a more serious question might have arisen; but with no question raised in the three years, with the corporation transacting business in the state, conforming to the state laws and the state Constitution, continuing to make its permanent investments by the expenditure of large sums of money, being a person within the meaning of the Fourteenth Amendment to the Constitution, and carrying on similar business to domestic corporations, it was entitled, upon the attempt of the state to apply to it a more onerous rule of taxation than the state applied to domestic corporations engaged in similar business, to do exactly as was done by the Southern Railway Company in the state of Alabama, invoke the protection of the Fourteenth Amendment.

The question is not involved here of the right of a state to impose different burdens on a foreign corporation coming into the state, or the right to. exclude such foreign corporation entirely. Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127. Plaintiff corporation was not a foreign corporation coming into the state. It was there, it had certain vested rights, and it had been there for a long period of time, between the admission of the state and prior

to the passage of the act in question, doing business similar in kind to that transacted by domestic corporations. To subject this plaintiff, under the circumstances disclosed in the record, to a more onerous rule of taxation than domestic corporations for carrying on similar business, is a denial of the equal protection of the laws and violative of the Fourteenth Amendment to the Constitution.

A jury was waived in the trial court, and the case was tried by the court, resulting in judgment for plaintiff (defendant in error here) for $8,789.49, with costs.

The judgment of the trial court is affirmed.