SNEED, Treasurer of the State of Oklahoma, v. SHAFFER OIL & REFINING CO., and three other cases.

Circuit Court of Appeals, Eighth Circuit.
September 30, 1929.

Nos. 8409-8412.

Fred Hansen, Asst. Atty. Gen. (Edwin Dabney, Atty. Gen., on the brief), for appellant.

S. B. Flynn, of Oklahoma City, Okl. (G. Earl Shaffer, of Tulsa, Okl., and Rainey, Flynn, Green & Anderson, of Oklahoma City, Okl., on the brief), for appellee Shaffer Oil & Refining Co.

Victor C. Mieher and R. Y. Stevenson, both of Tulsa, Okl., for appellee Amerada Petroleum Corporation.

John H. Brennan, G. J. Neuner, and Thomas J. Casey, all of Tulsa, Okl., Foster V. Phipps, of Muskogee, Okl., and Jack Paden, of Tahlequah, Okl., for appellee Barnsdall Oil Co.

J. C. Monnet, Jr., of Oklahoma City, Okl. (B. A. Ames, of Oklahoma City, Okl., John R. Ramsey and J. H. Hill, both of Tulsa, Okl., and Ames, Cochran, Ames & Monnet, of Oklahoma City, Okl., on the brief), for appellee Texas Co.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

LEWIS, Circuit Judge. The main issue in each of these four cases, argued together, is whether an act of the Oklahoma Legislature (chapter 113, Session Laws 1927), requiring an annual license fee from corporations that do business in that state and fixing the basis on which the amount thereof is to be ascertained is enforceable against appellees, plaintiffs below, all Delaware corporations. The complaints challenge the act on the ground that it discriminates between domestic and foreign corporations and thus denies to the latter equal protection of laws. Fourteenth Amendment U. S. Constitution. Each of the plaintiffs is and has been engaged continuously in the oil business in Oklahoma. One of them was there and so engaged prior to statehood. The others were regularly admitted before the passage of the Act of 1927. Each has acquired and owns within the state property of great value, tangible and intangible, much of it immovable, and they have like kinds of property in other states—all needed and used in the production, transportation and sale of oil and gasoline. Some have refineries, storage tanks and pipe lines that carry oil in the state and the products of all enter directly into both intra- and interstate commerce. Domestic corporations are doing the same kind of business and have the same kind of property there as plaintiffs. These facts are pleaded in more detail in the complaints. Each answer starts out with a general denial, but subsequent admissions therein seemed to make it unnecessary that plaintiffs adduce any proof. We so understood the arguments. Plaintiffs, on their motions, were each given judgments on the pleadings for the amount each had been compelled to pay under the Act of 1927 as a license fee for the year July 1, 1927, to June 30, 1928, as having been made under duress and protest.

Prior to 1910 the laws of Oklahoma did not require the payment of a license fee by either domestic or foreign corporations for the privilege of doing business. In that year an act was passed, now found in Comp. Okl. St. 1921, as sections 9946 et seq., which prohibited both domestic and foreign corporations doing business in the state without a license therefor. A pertinent section of that act, being section 9947, Comp. St. 1921, reads thus:

"It shall be the duty of every corporation incorporated under the laws of this state, and of every foreign corporation doing business in this state, to procure annually from the Corporation Commission a license

authorizing the transaction of such business in this state. Each domestic corporation shall pay a license fee of fifty cents for each one thousand dollars of its authorized capital stock or less, and each foreign corporation shall pay a license fee of one dollar for each one thousand dollars of its capital stock employed in its business done in this state: Provided, that the license fees provided for in this article shall not be required on that portion of its capital stock employed by any corporation in any business upon which a production, income or gross receipts tax is required to be paid under the laws of this state; but any corporation claiming exemption from the payment of the license fees on any portion of its authorized capital shall, in addition to all other statements required by the provisions of this article, file a statement under oath of its president, secretary or other managing officer showing in detail the different kinds of business in which it is engaged, and the portion of its capital employed in that part of its business upon which a production, income or gross receipts tax is required to be paid under the laws of this state."

Section 9952, Comp. St. 1921, reads:

"The license tax hereby provided for shall authorize the corporation complying with the provisions of this article to transact its business during the year, or for any fractional part of such year in which such license tax or fee is paid. The term 'year' as used in this article shall mean from and including July first to and including June thirtieth, next thereafter."

This act, and especially said section 9947, remained unchanged until the Act of 1927, § 1, which amended said section 9947 by changing the second sentence thereof to read: "Each domestic corporation shall pay a license fee of fifty cents for each one thousand dollars of its authorized capital stock or less, and each foreign corporation shall pay a license fee of one dollar for each one thousand dollars of its capital invested in its business in this state." And the said act then defined the words "capital invested in its business," in relation to foreign corporations, thus: "The words 'capital invested in its business' as used in this Act shall be construed to mean all the assets including money and property, tangible and intangible used or employed from year to year by such corporation in the transaction of its business in this state."

The state statute imposes penalties for failure to pay the fee and obtain a license from the Corporation Commission, the most severe being cessation of business within the state, inability to make valid contracts therein, and ouster therefrom. The Commission prepared blank forms for reports pursuant to the requirement of the Act of 1927, sent them to plaintiffs and demanded that they be filled out, returned and the fee paid as the act requires. They protested and asserted that the act denied to them equal protection of laws. The Commission insisted that the payments must be made. Some of the plaintiffs protested to the treasurer of the state, to whom the exacted payments were to be made, asserting discrimination against them and the invalidity of the act. The Attorney General of the State was appealed to, and he notified at least one of the plaintiffs that if the fee was not paid its right to do business in the state would be forfeited and the state would have a lien upon its assets to compel the payment of the license fee, and that in addition thereto there was a penalty of ten dollars each day that the failure and refusal continued, which would also become a lien on the property of the corporation recoverable by the State, and that if payment was not made on a day fixed he would at once take the proper steps to forfeit the license, oust it from doing business in the state and collect the penalties. Each of the plaintiffs then filled out the form of report prepared by the Corporation Commission, returned it and paid the fee, and, as said, they each recovered judgment for its return. In Cause No. 8409 the plaintiff reported its total assets as $37,000,000 (figures below $100,000 are omitted), of which $22,500,000 are in the state of Oklahoma, consisting of lands held in fee, developed leases, undeveloped leases, buildings and structures, motor cars, intangible property and current assets. Property amounting to more than $14,000,-000 was outside the state. After deducting from the $22,500,000 that part in Oklahoma which was claimed to be exempt, its return showed $5,500,000 in that state on which it paid $5380.00. The plaintiff in Cause No. 8410 showed in its return $19,700,000 assets, of which $11,600,000 was situate in Oklahoma, consisting of the same kind of property listed in the return just mentioned, and $8,100,000 was outside the state. After deducting the exempt property in Oklahoma it showed a balance in Oklahoma of $7,500,000, and plaintiff paid to the state treasurer $7530.84. It conceded that it was liable for a part of this amount and obtained recovery of the remainder, $4076.46.

The return of plaintiff in Cause No. 8411 disclosed that the total value of all of its assets was $17,000,000, of which $11,600,000 was in Oklahoma, and of the same character as reported in the other returns. The remainder was outside the state. After deducting the exempt property in Oklahoma it reported a balance of $3,400,000 in Oklahoma, and paid to the state treasurer $3415.00. The report of the plaintiff in No. 8412 showed that the total value of all of its assets was $323,800,000, of which $29,300,000 was in Oklahoma, of the character before stated, the remainder being outside the state. After deducting that part in Oklahoma which was exempt it reported a balance of $16,900,000 in Oklahoma, and paid the state treasurer $16,939.00.

Reverting now to the Act of 1927, § 1, it seems plain that the words, "each foreign corporation shall pay a license fee of one dollar for each one thousand dollars of its capital invested in its business in this state," serve no purpose. They are useless in view of the definition which the act gives to the phrase, "capital invested in its business." Eliminating this circumlocution no definition was needed to express the legislative intent and purposes, for the body of the amended section as to foreign corporations is in substance this: and each foreign corporation shall pay a license fee of one dollar for each one thousand dollars of its assets, including money and property, tangible and intangible, used or employed from year to year by such corporation in the transaction of its business in this state. Thus the basis of the fee for a domestic corporation is a named rate on its authorized capital stock, and for a foreign corporation a higher rate on its assets within the state, both factors being substantially different. If in a conceivable comparison between a domestic and a foreign corporation it should turn out that the foreign corporaion paid no more or less than a domestic the result would be fortuitous; "the act has no tendency to produce equality; and it is of such a character that there is no reasonable presumption that substantial equality will result from its application." Air-Way Corp. v. Day, 266 U. S. 71, 85, 45 S. Ct. 12, 15, 69 L. Ed. 169. The Fourteenth Amendment is a pledge of protection of equal laws, and no impediment may be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; and where a classification is not based on a real and substantial difference having a reasonable relation to the subject dealt with, it is arbitrary and opposed to the guaranty. Power Mfg. Co. v. Saunders, 274 U. S. 490, 47 S. Ct. 678, 71 Ed. 1165; Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923. In Hanover Ins. Co. v. Carr, 272 U. S. 494, 47 S. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713, the subject under consideration is fully discussed, and at pages 510, 511 of 272 U. S., at page 183 of 47 S. Ct., it is said:

"In subjecting a law of the state which imposes a charge upon foreign corporations to the test whether such a charge violates the equal protection clause of the Fourteenth Amendment, a line has to be drawn between the burden imposed by the state for the license or privilege to do business in the state and the tax burden which, having secured the right to do business, the foreign corporation must share with all the corporations and other taxpayers of the state. With respect to the admission fee, so to speak, which the foreign corporation must pay to become a quasi citizen of the state and entitled to equal privileges with citizens of the state, the measure of the burden is in the discretion of the state and any inequality as between the foreign corporation and the domestic corporation in that regard does not come within the inhibition of the Fourteenth Amendment; but after its admission, the foreign corporation stands equal, and is to be classified, with domestic corporations of the same kind."

Following, as we believed, the principle announced in Southern Railway Co. v. Greene, 216 U. S. 400, 30 S. Ct. 287, 290, 54 L. Ed. 536, 17 Ann. Cas. 1247, this court held, in Leecraft v. Texas Co., 281 F. 918, the Act of 1910 to be in contravention of the Fourteenth Amendment. The Act of 1927 seems to be more obviously open to the attack. Foreign corporations are not classified with domestic corporations of the same kind. The fee exacted of one is to be ascertained in a different and unequal way from the fee exacted of the other. In the opinion in the Greene Case we find this, applicable to the cases now under consideration:

"We have here a foreign corporation within a state, in compliance with the laws of the state, which has lawfully acquired a large amount of permanent and valuable property therein, and which is taxed by a discriminating method, not employed as to domestic corporations of the same kind, carrying on a precisely similar business."

We do not doubt the payments were all made under duress and that the pleadings so

show. Plaintiffs asserted their rights in vain and protested against the exactions. The act itself is coercive. The severity of its threatened penalties compelled immediate compliance. Atchison, T. & S. F. Ry. Co. v. O'Connor, 223 U. S. 280, 32 S. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050; Gaar, Scott & Co. v. Shannon, 223 U. S. 468, 32 S. Ct. 236, 56 L. Ed. 510;. Ward v. Board of County Com'rs of Love County, 253 U. S. 17, 40 S. Ct. 419, 64 L. Ed. 751.

Appellant's counsel argues that plaintiff's cause of action in Case No. 8412 is barred because not brought within thirty days after it paid the fee of $16,939 to the state treasurer. There is no claim that the action is barred under the general Statute of Limitations, but appellant relies on section 9971, Comp. Okl. St. 1921, which in part provides:

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them. It shall be the duty of such collecting officer to hold such taxes separate and apart from all other taxes collected by him, for a period of thirty days and if within such time summons shall be served upon such officer in a suit for recovery of such taxes, the officer shall further hold such taxes until the final determination of such suit."

This section is first found in an Act passed at the Legislative Session of 1915 (Laws 1915, c. 107, § 7). That act deals first with general ad valorem taxes, their levy, equalization and collection and appeals by the taxpayer to the courts in cases where he feels aggrieved. The section relied on is found in that part of that act that treats of the subjects just stated. That act deals further with taxes that may be levied on mining property and the production of mines, including petroleum and natural gas, as well as other minerals. The levy is to be a fixed per cent. of the value of gross production and is in lieu of any other method. Provision is therein also made for taxing the property of certain transportation and transmission companies operating lines in or through the state. The State Board of Equalization is given power to hear complaints of such companies as to errors in computation of the tax and the amount thereof, and appeal from its orders to the supreme court may be taken. There is no reference in that act to the annual license fee exacted of corporations, nor to the statute which imposed it. It therefore seems that the special limitation in the Act of 1915 applies only to the subject of ad valorem taxes there under consideration. The act gives no suggestion of an intention to apply the thirty-day limitation to a wholly different subject. The rule was recognized by the supreme court of Oklahoma in Payne v. Smith, 107 Okl. 165, 231 P. 469, 470, wherein it was held that section 9971 has no application to special improvement taxes. The court said:

"Section 9971 is a revenue section included in the Revenue Act, while the taxing provisions for sewers and street improvements appear in the article pertaining to cities and towns."

See also Randall v. Arkansas City, 114 Kan. 178, 217 P. 298.

Furthermore, the section relied on does not include cases in which payments are made under duress.

For the reasons stated the judgment in each of the four cases is affirmed.