**WEEMS, Treasurer of State of Oklahoma, v. BRUCE et al. (two cases).**

**Nos. 710, 711.**

Circuit Court of Appeals, Tenth Circuit.

June 29, 1933.

C. W. King and Fred Hansen, both of Oklahoma City, Okl. (J. Berry King, of Oklahoma City, Okl., on the brief), for appellant.

D. A. Richardson, of Oklahoma City, Okl. (S. W. Hayes, of Oklahoma City, Okl., on the brief), for appellees.

Before COTTERAL and McDERMOTT, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

In the court below judgments on the pleadings were given and entered in favor of plaintiffs in each of the above cases. The allegations of the complaints in the two cases are essentially the same. The facts alleged in the complaints and admitted by the answers and otherwise appearing in the record necessary for the decision of the cases are the following:

The two corporations named in the titles before their dissolution commenced these suits in the court below against the predecessor of appellant in the office of treasurer of the state of Oklahoma to recover moneys paid by them to the said state treasurer under protest. Later appellant Weems was substituted as defendant in each of the cases, and, the corporations having been dissolved by legal proceedings in the state court, the above-named individuals as liquidating agents were substituted as plaintiffs.

In 1910 the Legislature of Oklahoma passed an act (Laws 1910, c. 57) which as amended in 1927 (Laws 1927, c. 113) provided:

"Section 1. It shall be the duty of every corporation incorporated under the laws of this State, and of every foreign corporation doing business in this State, to procure annually from the Corporation Commission a license authorizing the transaction of such business in this State. Each domestic corporation shall pay a license fee of Fifty (50¢) Cents for each One Thousand ($1,000.00) Dollars, of its authorized capital stock or less, and each foreign corporation shall pay a license fee of One ($1.00) Dollar, for each One Thousand ($1,000.00) Dollars, of its capital invested in its business in this State."

"Section 3. The words 'capital invested in its business' as used in this Act shall be construed to mean all the assets including money and property, tangible and intangible used or employed from year to year by such corporation in the transaction of its business in this State."

On September 30, 1929, the Circuit Court of Appeals of the Eighth Circuit, in the case of Sneed v. Shaffer Oil & Refining Company, 35 F. (2d) 21, held this statute as against foreign corporations unconstitutional because in violation of the equal protection clause of the Fourteenth Amendment. The decision of the Circuit Court was accepted by the administrative officers of the state of Oklahoma as final. For the fiscal year beginning July 1, 1930, the state treasurer demanded and collected from each domestic corporation in the state 50 cents for each $1,000 of its authorized capital stock or less, and from each foreign corporation, of which there were many doing business in the state, only the minimum fee provided in the statute of $25 without respect to the capital invested in its business in the state. Kay County Gas Company, the original plaintiff in case No. 710, in compliance with the demand of the state treasurer paid to him on account of said tax $4,532, of which $4,507 were paid under protest. The original plaintiff in case No. 711, Marland Refining Company, paid to the state treasurer on account of said tax $12,500, all of which except $25 was paid under protest. In respect of said license fees demanded by the state treasurer and paid by said corporations under protest it is alleged in the complaints that their collection "discriminates against plaintiff; operates to deprive it of its property without due process of law, and constitutes a denial to it of the equal protection of the law, in violation of the 14th Amendment to the Constitution of the United States," and that being unconstitutional and void as applied to foreign corporations "the said act fails in its entirety, and is therefore also void as applied to domestic corporations, including this plaintiff."

It is clear from the foregoing statement of the facts alleged in the complaints that a federal question and also local or state questions were fairly raised and presented in the complaints. It is also clear that these suits were rightly brought against the state treasurer who demanded and received these payments and that they are maintainable against appellant who succeeded him in said office and in the possession of the said moneys. Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Hopkins v. Clemson Agricultural College, 221 U. S. 636, 31 S. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; Home Tel. & Teleg. Co. v. Los Angeles, 227 U. S. 278, 33 S. Ct. 312, 57 L. Ed. 510; Greene v. Louisville & Interurban R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

The federal and state or local questions involved in these appeals are the same, namely, whether the act of the Oklahoma Legislature declared to be unconstitutional in the Sneed case as against foreign corporations is also unconstitutional as against domestic corporations.

It is admitted by appellant in his brief that the tax provided for in the act constituted a license tax required to be paid by corporations to do or carry on business in the state.

As a result of the acceptance of the decision in the Sneed Case as final and the administration of the law in conformity therewith, foreign corporations engaged in exactly the same business in which domestic corporations were engaged in the fiscal year beginning July 1, 1930, were permitted to do so by the payment of a nominal fee of $25, while the plaintiff Kay County Gas Company, a domestic corporation, was required to pay, in addition to $25, $4,507, and the plaintiff Marland Refining Company, a domestic corporation, in addition to $25 was required to pay $12,475. It is not reasonable to believe the Legislature of 1910 or of 1927 would have passed such an unfair law discriminating as it does against domestic corporations and in favor of foreign corporations of which it appears from the record there were many in the state doing business similar to that engaged in by plaintiffs.

In Meyer v. Wells Fargo & Co., 223 U. S. 298, 32 S. Ct. 218, 220, 56 L. Ed. 445, the Supreme Court, in discussing the question under consideration, said: "Whether the statute could be construed as separable, of course, would be ultimately for the state court in any event. Western Union Telegraph Co. v. Texas, 105 U. S. 460, 26 L. Ed. 1067. But we see no possible construction on which it could be upheld without being so remodeled that it would be a mere speculation whether the legislature would have passed it in the new form."

After this decision by the Supreme Court of the United States holding the act of the Oklahoma Legislature unconstitutional in respect to interstate commerce, the Supreme Court of Oklahoma in Comanche, L. & P. Co. v. Nix, 53 Okl. 220, 156 P. 293, 295, in respect to the emasculated statute, said: "The legislative purpose, it is manifest, was to tax all, and not a part, of those within the statute. * * * We do not believe that the Legislature intended to place upon corporations doing business wholly within the state burdens greater than those imposed upon corporations doing an interstate business; at least there is nothing in the statute or in the current history of the times that justifies the conclusion. The effect of the decision in the express company case was to relieve from the burden of this tax many agencies which it was intended by the Legislature to reach."

In the Employers' Liability Cases, 207 U. S. at page 501, 28 S. Ct. 141, 146, 52 L. Ed. 297, the court said: "If it can be lawfully done, our duty is to construe the statute so as to render it constitutional. But this does not imply, if the text of an act is unambiguous, that it may be rewritten to accomplish that purpose. Equally clear is it, generally speaking, that where a statute contains provisions which are constitutional and others which are not, effect may be given to the legal provisions by separating them from the illegal. But this applies only to a case where the provisions are separable, and not dependent one upon the other, and does not support the contention that that which is indivisible may be divided. Moreover, even in a case where legal provisions may be severed from those which are illegal, in order to save, the rule applies only where it is plain that Congress would have enacted the legislation with the unconstitutional provisions eliminated."

Our conclusion that the Legislature would not have passed the emasculated statute as administered by the state officers for the fiscal year 1930 is not in conflict with the decision of this court in Franklin v. Carter, 51 F.(2d) 345. The statute considered in that case expressed the will of the Legislature of the state of Oklahoma and was held not to be in derogation of the clause of the Fourteenth Amendment forbidding a state to deny to any person within its jurisdiction equal protection of the law. Here we are considering an emasculated statute which in our opinion does not in that form express the intent or purpose of the Legislature when it enacted the original statute. Nor is our conclusion in conflict with the decision of the Supreme Court of the United States in Union Bank & Trust Co. v. Phelps, 288 U. S. 181, 53 S. Ct. 321, 322, 77 L. Ed. 687. In that case it appears that the plaintiff bank sued in the state court (225 Ala. 238, 142 So. 552) to recover $2,521.69 alleged to have been illegally exacted as taxes for the year ending September 30, 1931, on the ground that the tax assessed had been exacted in violation of the equal protection clause of the Fourteenth Amendment. The Supreme Court in deciding the case said:

"The several states lack power to tax national bank shares, except as expressly permitted by Congress. * * * This is enough to negative the idea that shares of national and state banks are essentially the same for purposes of taxation. And the Alabama Supreme Court has held that under her Constitution, although the Legislature may have included them in the same class of taxable objects, there is permissible distinction between them.

"To accept the doctrine that as the states can only tax a federal instrumentality when permitted by Congress, therefore they cannot tax competitors of such instrumentalities within their general jurisdiction in some other fashion without violating the Fourteenth Amendment, would be both illogical and destructive of their proper independence.

"Such instrumentalities are exempted from state taxation without the express consent of Congress, by the federal Constitution. They are of a class wholly distinct from the property of ordinary corporations or individuals, and this fact cannot be disregarded by the state. If the state sees fit to tax unrestricted property within her jurisdiction, and to omit national bank shares, the classification cannot be said to be arbitrary and wholly unreasonable; the basis of it is plain enough. It may be vastly more important for the state to omit national bank shares and tax ordinary moneyed capital according to a plan not permissible in respect of national bank shares, rather than conform to the stand-

ard prescribed by Congress. * * * The constitutional inhibition against taxing these agencies does not abridge the taxing power of the several states in respect of other property. The implied exemption is a shield for federal agencies; not the source of congressional power to control state action in respect of other matters."

The alleged discrimination of the emasculated Alabama statute against state banks was one of necessity imposed upon the state Legislature by the power invested in Congress to protect federal agencies against the taxing power of the state. No such imposed necessity exists in respect to the Oklahoma emasculated statute, and therefore no occasion exists for the application of the rule applied by the Supreme Court in the Alabama case.

Finally our conclusion is strengthened rather than weakened by the considerations which led the Supreme Court of Oklahoma to a different conclusion in respect to this same statute in Wood & Co. v. Russell, 102 Okl. 92, 226 P. 1040, 1041. In that case it appears that the Circuit Court of Appeals of the Eighth Circuit, in the case of Leecraft v. Texas Company, 281 F. 918, had held the statute now under consideration unconstitutional as applied to certain foreign corporations which had engaged in business in Indian Territory prior to the admission of Oklahoma as a state. Wood & Co., a domestic corporation, brought suit in the state court to enjoin the collection of the license fee provided by the statute. In respect to the question now under consideration the Supreme Court in that case said: "The plaintiff contends that, as this statute cannot be applied to certain foreign corporations under the foregoing decision, the provisions of the act relating to domestic corporations was thereby rendered invalid; that, if the legislature had known that the provisions of the act relating to certain foreign corporations was invalid, the law would not have been passed. The principle of law contended for by the plaintiff is sound, but we cannot agree with the application of that law to the facts in the instant case. The decision referred to applies to only a small number of corporations and does not deprive the state of the right to tax such foreign corporations in the same manner as domestic corporations. The invalidity of this statute, as to such corporations, does not destroy the purpose of the statute or render the same inoperative. Instead of saying that the Legislature would not have enacted a law levying a license tax on domestic corporations and foreign corporations entering the state after its enactment, had it known of the invalidity of the act as applied to certain corporations, which entered the state prior to the enactment, it is more reasonable to believe that the Legislature would have enacted the law in its present form as to domestic corporations, and all foreign corporations, except the class affected by the decision referred to, and, as to such last-mentioned corporations, would have placed them on the same footing as domestic corporations."

It seems clear from this quotation that the Supreme Court of Oklahoma understood that the decision in the Leecraft Case affected only a small number of corporations and assumed, against the subsequent holding in the Sneed Case, that the statute was valid as against all other foreign corporations. Such assumption is clearly implied in this language of the court: "It is more reasonable to believe that the Legislature would have enacted the law in its present form as to domestic corporations, and all foreign corporations, except the class affected by the decision referred to, and, as to such last-mentioned corporations, would have placed them on the same footing as domestic corporations."

It will of course be noted that the discussion by the court of the constitutionality of the statute under section 44, article 9, of the state Constitution is not in point here.

In this connection we note that in 1931 (Laws Okl. 1931, c. 66, art. 4) the Legislature of the state passed a law superseding the one in question which provides that:

"Section 4. It shall be the duty of every corporation organized under the laws of this state and of every corporation organized under the laws of any other state, territories, District of Columbia, insular possessions or any foreign country, doing business in this state, to procure annually, from the Oklahoma Tax Commission, a license authorizing the transaction of its business in this state.

"Each such corporation shall pay for such license a fee of one dollar per each one thousand dollars, or portion thereof, of the value of its capital stock employed in Oklahoma, as the value of capital stock employed in Oklahoma is defined in Section Six hereof."

The emasculated statute as administered by the state treasurer does not express the purpose and intent of the Legislature which enacted the original statute, and in our opinion in its present emasculated form it would never have been enacted by the Legislature of the state.

We conclude the statute as administered was in conflict with both the national and state Constitutions.

Judgments affirmed.

COTTERAL, Circuit Judge, in his conference memorandum favored the affirmance of these judgments. He died April 22, 1933.